# DISTRICT OF COLUMBIA *v.* GALLAHER.

APPEAL FROM THE COURT OF CLAIMS.

Argued January 23, 1888. — Decided February 6, 1888.

When, in the performance of a written contract, both parties put a practical construction upon it which is at variance with its literal meaning, that construction will prevail over the language of the contract.

In this case the defendant in error having under a written contract with the agents of the plaintiff in error constructed a sewer which in the course of construction was, by mutual consent, and for reasons assented to by both parties, made to vary in some respects from the plans which formed part of the contract, but without any agreement as to a change in the contract price; *Held*, for the reasons given by the Court of Claims, that the judgment of that court awarding the contract price for the work is affirmed.

THE case is stated in the opinion of the court.

*Mr. Assistant Attorney General Howard* for appellant. *Mr. Attorney General* was with him on the brief.

*Mr. Thomas Hughes* and *Mr. Woodbury Blair* for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This suit was brought against the District of Columbia for the recovery of the sum of $138,459.55 ; of this $35,436.49 were alleged to be payable as the balance due upon a contract for building and completing the brick arch upon stone abutments of Tiber Creek sewer, as set out and described in the

contract and specifications attached to the petition, at the price of $113 per lineal foot. The additional sum of $98,130.44 was alleged to be due on account of extra work and materials furnished by the contractors beyond the requirements of the contract in and about the same work. This indebtedness was denied, and the defendant also filed a plea of set-off in the sum of $82,176; of this, $7176 was for the value of stone alleged to have been sold by the defendant to the claimants; $35,000 on account of deficiencies in the construction of the sewer, and $40,000 as the reasonable cost and expense of filling the canal for the whole length of the sewer, which the defendant claimed the petitioners were bound by their contract to do. Upon the facts found by the court, it was held that the claimants were entitled to recover upon their claims the sum of $43,935.74; that the defendant was entitled to recover upon the set-off and counterclaim the sum of $1479; and judgment was rendered in favor of the petitioners for the difference, being the sum of $42,456.74.

The facts as found by the court, so far as material, are as follows:

The Tiber Creek, prior to the year 1871, was a natural stream of water flowing through the city of Washington and discharging into what was then known as the Washington Canal, on Third Street west, between Maine and Missouri avenues, and by that into the Eastern Branch.

Among the improvements projected by the Board of Public Works was that of utilizing this stream in connection with the sewerage system of the city, and the general plan adopted was that of constructing a main sewer of masonry and brickwork along its course, through which the stream should flow, receiving and conducting the sewage from lateral connections on either side.

It was constructed for the most part in sections by contract with different parties, and the part here in controversy was the final or outlet section. It was commonly styled the Tiber Creek sewer or arch.

On and before July 14, 1873, a portion of this sewer had been completed, which (so far as is here material) extended

from the north side of Pennsylvania Avenue, across the Botanical Garden, into Third Street, and along and under Third Street to a point 3 feet north of the south building line of Maryland Avenue, at which terminus the sewer was (so far as here material) of the following construction and size, namely : The side walls were of masonry, about 3 feet high and 5 feet 6 inches thick, supporting an approximate semi-elliptic arch of 30 feet span and 7 feet 10 inches rise. The extrados of the arch, including the skew-back course, was backed up with rubble masonry to the level of its crown.

The timber sleepers for the foundations were 41 feet in length.

Proposing to continue the sewer to its outlet with the same construction and size, the Board of Public Works, on July 14, 1873, sent to H. L. Gallaher & Co., consisting of Hugh L. Gallaher and Edwin H. Smith, a written proposal for continuing the Tiber Creek sewer from its existing terminus at Maryland Avenue and Third Street southwest, along the line of the Washington Canal to its junction with the James Creek Canal, the size and manner of construction of the sewer to be the same as that of the portion of the same sewer constructed on Third Street southwest, and to be paid for at the rate of $113 per lineal foot ; and they were requested by return mail to notify the board of their acceptance or rejection of the proposal. On the same day H. L. Gallaher & Co., by writing, accepted it. A written contract bearing date July 19, 1873, was executed between the parties in the same terms as that set forth in the petition. Before work was commenced under it the District engineer was instructed to give the grade of the sewer, to be laid out with the same dimensions as of the existing sewer, which he did in the summer of 1873. It was proposed, however, and consented to by both parties, to deviate from the contract, by which the continuation of the sewer was to follow and be laid in the bed of the canal, so as to take it by a curve from the point of connection on the westerly bank and then proceed parallel with and along said bank to the terminus. About the time of giving the grade Gallaher applied for a plan of the sewer, when by direction of the

engineer a plat or working drawing of the structure in transverse section, exhibiting its form and dimensions according to a fixed scale, and representing a structure similar to that of the completed section at the point of connection, was furnished. Gallaher and Smith then proceeded with the work in accordance with that plan, and completed some part of the excavation, and procured and brought on the ground material, but had not constructed any portion of the arch, when Joseph G. and Henry E. Loane, two of the petitioners, bought out the interest of Smith in the contract, and thereupon the original contract was cancelled and one in similar terms executed on December 22, 1873, by the Board of Public Works with the claimants, composing the firm of Gallaher, Loane & Company, a copy of which is set out with the petition. The claimants on entering into said contract received from Gallaher & Smith the working plan furnished to them by the District engineer. It represented the plan and dimensions of the several parts of the structure of the sewer to be built under their contract, and was similar to the completed section with which it was to connect, as provided by the contract, and was the plan under which the work had been commenced and carried on. They proceeded with the work in accordance with the plan, and without calling the attention of the board to any alleged or apparent variation of the same from the contract, and constructing the flooring, masonry, and arch according to the dimensions appearing thereon, and had finished about 680 lineal feet thereof when the Board of Public Works was abolished by act of Congress of June 20, 1874. The work as thus far done was constructed under the direction of the District engineers, but neither they nor the Board of Public Works intimated to the claimants that the work was not progressing to their satisfaction and in accordance with the former sample work, in which the skew-back was constructed of rubble masonry.

Under the new form of government established by that act for the District, Richard L. Hoxie was detailed as engineer on July 6, 1874, and forthwith made a careful examination of the work being done by claimants, as to its character and con-

formity with the specification of the contract, in the presence of one of the claimants.

He found that, generally, it was being built in conformity with the specifications, but there were several departures. The flooring and sleepers were, as he thought, inferior to the quality required; the masonry was not strictly in conformity with the specifications; there were too few bond stone used; the inside walls were not dressed, and the stones generally were small. But what attracted his attention, and was of the most importance, was the manner of constructing the skew-back. It was made of small stones, spalls, and mortar, while it should have been made, as he thought, of large dimension stone. He called the attention of the party present to these alleged variations, and particularly to the skew-back, which he wished constructed of dimension stone. He was informed that to procure the stone would cause considerable delay in the prosecution of the work. Thereupon he directed that the skew-back might be made of brick, and added that he should make a deduction in price, but named no sum. Thereafter claimants proceeded with their work, making the skew-back of brick, under the direction of defendant's engineers, without further complaint.

In August, 1874, the claimants applied for measurement of the work so far as completed and a partial payment. The engineer thereupon transmitted to the board of audit, which, by the act of June 20, 1874, was charged with the settlement of such accounts, a statement with the measurement requested. In that statement the engineer represented that the contract required the inside sewer face of the stone wall rough-dressed, and a skew-back stone not less than a three-foot six-inch bed, and in length of not less than four feet; and that these requirements of the contract had not been complied with. He, therefore, on this account, recommended a deduction of $8.94 per lineal foot of the sewer. The board of audit audited the account with that deduction from the contract price, in accordance with the statement of the engineer. The claimants received the partial payment under protest. The amount of this deduction upon the entire work performed by the claimants constitutes the sum of $35,436.49, for which they sue.

· The whole controversy between the parties as to this item, and also for a portion of the claimants' demand on account of extra work and material, arises out of the fact that the letter of the contract and specifications does not correspond with the plan of the work as furnished by the District engineer and the sample of the work which had been done previously by other contractors, and with which that of the present claimants was to connect. The work as actually done was done under the direction and supervision of the District engineer and was performed in accordance with the plan and sample which was supposed and understood to be what was required by the contract, and to be paid for at the contract price. We think that the practical construction which the parties put upon the terms of their own contract, and according to which the work was done, must prevail over the literal meaning of the contract, according to which the defendant seeks to obtain a deduction in the contract price. The other items allowed by the Court of Claims, both to the claimants · and the defendant, we think well established upon the facts as ascertained by it. The reasons for its judgment, as set forth in the opinion of the court, we think entirely satisfactory. 19 C. Cl. 564.

*The judgment is affirmed.*