## FOX SOLID PRESSED STEEL CO. v. SCHOEN MFG. CO. et al.

### (Circuit Court of Appeals, Third Circuit. January 24, 1898.)

### No. 31.

INTERPRETATION OF CONTRACTS—MANUFACTURE OF CAR TRUCKS.

Complainants and defendants were making center plates for car trucks under rival patents, and complainant, besides, was making a truck frame known as the pressed metal frame. They made a contract with the purpose, as expressed in its preamble, of adjusting their differences relating to pressed metal centers for truck frames. The contract, however, contained the clause forbidding defendants to make truck frames, "or any part of such frames, when made of pressed metal." At the time of the contract, defendants, with complainant's knowledge, were making pressed metal parts of diamond truck frames, and continued to do so for several years without objection. *Held*, that this clause, construed in the light of the circumstances, merely prohibited defendants from making the pressed metal truck frames or parts thereof which complainants were putting on the market, and did not prevent them from making pressed metal parts of other kinds of truck frames. 77 Fed. 29, affirmed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

This was a suit in equity by the Fox Solid Pressed Steel Company against the Schoen Manufacturing Company and others to restrain them from violating a contract. The circuit court dismissed the bill, with costs (77 Fed. 29), and the complainants have appealed.

Edwin H. Brown, for appellants.

John G. Johnson and Strawbridge & Taylor, for appellees.

Before DALLAS, Circuit Judge, and BUTLER and KIRKPATRICK, District Judges.

KIRKPATRICK, District Judge. The appellants (complainants below) filed their bill in the circuit court for the Western district of Pennsylvania, to restrain the respondents from manufacturing truck frames for moving vehicles, or parts of truck frames, when made of pressed metal, in violation of an agreement between the parties. The clause of the contract upon which the complainants rely is in these words, viz.:

"It is further agreed that the parties of this second part will not engage during the life of the agreement in the manufacture of truck frames for moving vehicles, or any part of such frames, when made of pressed metal."

The complainants' contention is that, by this clause of the agreement, the defendants were prohibited from manufacturing parts of truck frames when such parts were made of pressed metal. The specific offense complained of is that the defendants have manufactured pressed metal truck bolsters to be used as a part of the ordinary diamond truck. The defendants, by their answer, admit that they have placed on the market pressed metal steel bolsters to be used in connection with Diamond truck frames, but insist that they are not prohibited from so doing by the terms of the agreement, which, properly construed, applies only to the parts of truck frames which were composed of pressed metal. It will be perceived that the clause of the contract in question, standing alone, is susceptible of either construction which has been put upon it by the parties. In

order that it may be properly interpreted, it will be necessary to examine the entire instrument, consider its subject-matter, the motives that led to it, the circumstances surrounding its execution, and the object intended to be effected.    Davis v. Barney, 2 Gill & J. 382.

It appears from the record that both the complainants and defendants, prior to and at the time of the execution of the agreement, were the owners of certain patents relating to the manufacture of center plates for car trucks, concerning the validity of which suits were pending between them.    The complainants were also engaged in the manufacture of pressed metal truck frames, with which business the defendants in no way interfered.    A large part of defendants' business, outside of making center plates for all kinds of car trucks, was the manufacture of pressed metal parts of truck frames which were known as "Diamond truck frames," and which were constructed partly of wood and partly of iron or steel.    The only business for which the parties competed was that of furnishing metal center plates, which were used in common by both styles of truck frames, as well as those specially manufactured by the complainants, and known as "pressed metal truck frames," as those in more general use, and known as "Diamond truck frames."    The object of the agreement, as set out in its preamble, was to adjust the differences between the parties so far as they related to pressed metal centers for truck frames.    Except in the clause in controversy, no other subject is mentioned in the agreement.    It seems to have been injected as an afterthought, to accomplish some object outside of the subject-matter of the agreement.    That it was not for the purpose of compelling the defendants to abandon any part of the then existing business is apparent from the testimony.    It is the evidence on the part of the defendants, and not denied by the complainants, that, at the time the contract was entered into, the defendants were, with the knowledge of the complainants, manufacturing, and offering to the trade, parts of Diamond truck frames which were made of pressed metal, and that they continued to do so after the making of this agreement.    The character of the business was not changed, and no objection was made to it until about the time of the filing of this bill, a period of over three years.    It was not only acquiesced in by the complainants, but their bill avers that up to about February 1, 1895, the defendants had complied with the terms of the contract.

Reading the controverted clause in the light of its context, with due consideration of the motives leading to and the object to be accomplished by the agreement (Chicago, R. I. & P. Ry. Co. v. Denver & R. G. R. Co., 143 U. S. 596, 12 Sup. Ct. 479), and giving to it that practical construction which both parties have put upon it (District of Columbia v. Gallaher, 124 U. S. 505, 8 Sup. Ct. 585), we cannot construe it as prohibiting the defendants from manufacturing pressed metal parts for any other truck frames than the pressed metal truck frames which the complainants are engaged in putting on the market.    Entertaining this view, it is unnecessary for us to determine the other questions presented in the argument.    The judgment of the circuit court will be affirmed.