BarNet, J.,
delivered the opinion of the court:
This suit arises out of a contract for the performance of certain work in connection with construction of a filtration plant situated in the District of Columbia. The contract was made between the Government and the firm of Cowardin, Bradley, Clay & Co., but shortly after the beginning of the work John D. McClennan was appointed receiver of said firm of contractors, and, as such receiver, completed it. This suit was begun by McClennan, who is now deceased. After his decease the present claimant was appointed receiver in his stead for the purpose of completing its prosecution. For the purpose of avoiding confusion, both the original contracting firm and Mr. McClennan will be referred to as “the contractors.”
The claim in this case is but for one item only, and that is pay for earth deposited upon a certain roadway, it being contended by the plaintiff .that the contractors should be paid for earth thus deposited as “ other fills and embankments shown by the plans or directed to be made by the engineer officer in charge,” mentioned in the contract, and for which pay at a certain rate per cubic yard is provided in the contract. On the other hand, it is contended by the defendants that under the terms of the contract the earth thus deposited is not the “ fills and embankments ” therein provided for, but is mere “ waste ” arising from the excavation work, for payment of which the contract contains no provision.
The first paragraph of the contract provides in general terms for the work to be done under it and the prices therefor to be paid, and makes the following provisions as to payment for fills and embankments, viz: “ for sixty-five thousand four hundred (65,400) cubic yards embankment under filters, for forty-six thousand seven hundred (46,700) cubic yards other embankment, and for one hundred and twenty-three thousand four hundred (123,400) cubic yards filling over filters; ” and this is the only mention or provision in the contract (aside from the specification thereto attached) as to fills and embankments. It will thus be seen that the contract standing alone provides for two kinds of embankment and one kind of filling. The provision for filling is specific in *176 character, and under the well-recognized rule unius expressio est alterius exclussio excludes every other kind of filling unless otherwise clearly shown by the specifications. We say clearly shown because of the well-known rule that when there is a conflict between the contract and the specifications the contract must govern. If, however, the deduction from the contract is only by inference and the specifications upon that point are clear and beyond question, a different rule might prevail. Particular attention is called to this feature of the contract for the reason that the plaintiff seeks to recover in this suit for the earth deposited upon the roadway in question as a “ fill,” and it doubtless comes within the definition of that term, though, as we understand, it is contended that, taking the contract and specifications together, it comes within both terms.
One of the kinds of embankment provided for is also specific in character, and under the rule above mentioned this also excludes all other kinds of embankment unless unmistakably provided for in the specifications; but as the plaintiff makes no claim under this item, it need not be further considered. The other item of “ other embankment ” will be considered further on in this opinion.
The plaintiff’s claim, however, rests upon certain provisions of the specifications, and more particularly upon paragraphs 57 and 58, which are as follows:
“ 57. Worh. — The work under this heading includes the filling of low places under filters and other structures, the filling of central courts, the embankments about the filters, and all other fills and embankments shown by the plans or directed to be made by the engineer officer in charge.
“ 58. Classification. — Embankments shall be divided into three classes:
“ 1. Embankment under filters.
“ 2. Embankments about the walls of filters and in courts.
“ 3. Filling over filters.
“ Material placed below the dam, in the roadway and at other low places for the purpose of disposing of it, and material disposed of off the ground shall not be paid for as embankment. When waste embankments come against the walls of the filters or the pure-water reservoir the usual section shall be built and paid for as embankment, and all material outside shall be treated as waste.”
*177 It is contended by the plaintiff that the phrase “ and all other fills and embankments shown by the plans ” in the above paragraph applies to the filling up of the roadway in question, because the same was shown upon the plans submitted with the proposals. An examination of the plans submitted with the proposals for the work shows that the roadway was indicated thereon, but contained no detail whatsoever as to exact location or dimensions. They merely mark where a roadway is to be placed. The findings show that when the contractors first began to deposit material upon the roadway the engineer officer in charge gave them the toe lines and slope of the same, and some months after the work was begun and after the contractor had placed considerable material upon this roadway the engineer officer in charge of the work furnished the contractor with a plan showing in detail the location and dimensions of this roadway, and thereafter the contractors deposited earth thereon under the inspection of this engineer officer as to the character of the earth thus placed, its dimensions, etc. This was continued and payments for the same made in the first voucher as “ other fills and embankment,” and thereafter without any separate designation, to the extent of $12,000, when its was concluded by the engineer officer in charge of the work that this filling of the roadway was not to be paid for under the contract, and payment for the same was then stopped and the $12,000 already paid deducted for subsequent sums earned under the contract. It should also here be stated that the findings do not show that the engineer officer in charge of the work ever directed in terms any deposit of waste material to be made upon the roadway.
It will be seen that paragraph 58 above quoted specifically provides for three classes of embankments: (1) Embankment under filters; (2) embankments about the walls of filters and in courts; (3) filling over filters; thus putting “fills” and “ embankments ” in the same class. No mention is made here of any filling to be placed upon roadways. This is a very significant fact militating against the contention of the plaintiff, because he now claims that the filling required for the roadway was nearly as much in amount as that estimated in *178 the contract for “ filling over filters,” which was specifically mentioned above.
It should also be noted that the classification of embankments made in paragraph 58 of the specifications is in perfect harmony with the first paragraph of the contract before quoted, for there we find practically the same classification with estimated amounts contained in the same, viz: “ 65,400 cubic yards embankment under filters, 46,700 cubic yards other embankment, and 123,400 cubic yards filling over filters.” By thus comparing the first paragraph of the contract and paragraphs 57 and 58 of the specifications, we are forced to the conclusion that the “ other embankment ” provided for in the contract is the “embankments about the walls of filters and in courts ” provided for in the specifications. We also here call attention to the fact that the estimated amount of “ other embankment ” provided for in the contract is 46,700 cubic yards, while the amount claimed for filling the roadway alone is more than double that amount. If the whole contract, including the specifications, had contemplated paying for the filling deposited in the roadway, it is hardly possible that there should have been such a discrepancy in the estimates.
Again, paragraph 58 provides that “ material placed below the dam, in the roadways, and at other low places for the purpose of disposing of it, and material disposed of off the ground shall not be paid for an embankment.” Here again filling is confounded with embankment, and while it is argued that the roadway in question was not a “ low place,” is it not unbelievable that the contract contemplated paying for the filling of this roadway which was not mentioned in either contract or specifications and which involved so large a part of the work, while it did specifically provide that no payment should be made for material placed “ in the roadways and other low places ” % And, for that matter, it certainly was a “low place” in the sense in which that term was used, otherwise 100,000 cubic yards of material would not have been required to fill it. Taking the contract as a whole it is inconceivable that a work of such a distinctive character and magnitude as the filling of this roadway could have been intended to have been included in the phrase “ all *179 other fills and embankments shown by the plans or directed to be made by the engineer officer in charge.”
As before stated, the findings show that during the time material was being placed upon the roadway the Government officers inspected the work as to lines, slopes, etc., and the plaintiff argues that this fact goes very far to show that it was filling provided to be paid for in the contract. There would be much force to this argument were it not for other circumstances connected with this work which explain this conduct of the Government officers. Paragraph 293 of the specifications shows that the Government contemplated the construction by itself of roadways in connection with this filtering plant, and it is as follows:
“ 293. Work done by United States. — The United States will construct the gatehouses, sand washers, pumping station, macadam roadways, and other structures not included in these specifications and necessary for the completeness of the plant, and the work to be done under these specifications shall be carried on so as to facilitate and not to discommode the prosecution of that and other adjoining and contiguous work, whether done by the United States or by another contractor.”
The findings show that this roadway was as convenient a place as any for the disposal of material taken from the filter beds, and they also show that the contractor was in some instances compelled to pay for the privilege of depositing waste outside of the filter-plant reservation. It thus appears to have been a privilege rather than otherwise for the •contractors to have been allowed the right to deposit material excavated from the filter beds upon this roadway. While he was doing this, of course it was the duty of the Government officers in charge to oversee and direct the work to the end that it should not interfere with the Government project for the whole plant, including the roadway.
The plaintiff contends that the allowance for a time by the engineer in charge for the fill on the roadway as coming within the provision for fill or embankment for which the contractors were to be paid, was a practical construction of the contract which must now prevail. The answer to fhG contention is that such construction was afterwards and during the progress of the work reversed; also that the rule *180 invoked prevails only where the contract is susceptible of more than one interpretation. (Gibbons v. United States, 109, U. S., 200; District of Columbia v. Gallagher, 124 U. S., 505.)
It is also contended that even if the work of filling the roadway was not within the contract, as it was of advantage to the Government, the plaintiff should recover upon quantum meruit. But, as the findings show, it involved no extra expense to the contractors, hence does not come within that rule; and, if our view of the contract is right, it was work performed outside of the contract for which the plaintiff is not entitled to recover upon quantum meruit, under the decision in Plumley v. United States, handed down January 6, 1913, by the Supreme Court.
It is ordered that a judgment be entered in this case dismissing the petition.