## City of Covington v. Union Light, Heat & Power Company.

(Decided April 22, 1932.)

592

SAMUEL W. ADAMS, City Solicitor, and RALPH P. RICH, Assistant City Solicitor, for appellant.

GALVIN & TRACY for appellee.

BLAKELY & MURPHY, amici curiæ.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from the judgment of the Kenton circuit court, ordering the dismissal of appellant's petition for an injunction to restrain and enjoin appellee from shutting off the service of gas to the inhabitants of the city of Covington.

As shown by the record and briefs, the Union Light, Heat & Power Company has for many years served the inhabitants of the city of Covington with gas, and during the course of that time has been awarded several franchises for this privilege.

The first of these franchises was granted in the year 1901 by ordinance for a period of 20 years to the Covington Gas Light Company, the predecessor of the appellee

in this case. That ordinance gave the company the right of "entering in and upon the streets and other public places of the city of Covington to lay and maintain pipes for conveying gas in and out of the city of Covington, Kentucky, for a term of 20 years," and prescribed certain conditions upon which the privilege might be enjoyed, among which conditions were certain stipulated charges per thousand cubic feet for lighting and fuel gas to be supplied. By section 4 of said ordinance is provided that "the gas supply under this ordinance and contract shall be manufactured in the city of Covington, unless it be natural gas." The rate provided in this ordinance of 1901 was $1.10 per thousand cubic feet, with a discount for prompt payment.

The Covington Gas Light Company, at some time subsequent to the year 1901, and prior to 1909, transferred and assigned the above-mentioned franchise to the appellee herein, the Union Light, Heat & Power Company.

In the year 1909, the Union Light, Heat & Power Company acquired quantities of natural gas from fields in West Virginia, and, being thus prepared to furnish natural gas to the city of Covington, desired to transport it also to Cincinnati. The company's existing franchise had then some 12 years to run, and it contended that, by the terms of the assigned franchise, it was authorized and empowered to supply natural gas to the city of Covington and its inhabitants, and for that purpose to use all the pipes and mains in the streets of Covington, and also to lay such other pipes and mains as might be necessary to transmit its natural gas, not only to the citizens of Covington, but through its streets to connect with other of its pipes laid for supplying its gas to other persons not residents within the state or city. This right was claimed by it under the provisions of its franchise authorizing it to lay and maintain mains and pipes for conveying gas not only to consumers in the city of Covington but to "consumers in and out of the city of Covington." However, it appears that the city of Covington disputed this construction of its franchise, contending that it did not give the right thereunder to supply anything but manufactured gas, and that it could not supply any one through its pipes and mains with gas except residents of the city of Covington. Therefore, when the company began the construction of this pipe

line within the city limits of Covington, the officials of the city objected to the construction of this main pipe through its streets for the purpose of conveying gas to the city of Cincinnati, and demanded that the company cease from this asserted unwarranted use of its streets.

This controversy resulted in a compromise agreement between the city and the company, and on March 11, 1909, the city council of Covington passed Ordinance No. 2814 to arbitrate their differences arising out of this proposed construction. This ordinance of 1909 was captioned as follows:

"Councilmen's Ordinance No. 2814

"An ordinance contracting with the Union Light, Heat and Power Company, assignee of the Covington Gas Light Company, for supplying of natural gas in the city of Covington, and the transportation of same through said city, and construing the ordinance granting a franchise to the Covington Gas Light Company, approved January 10, 1901."

In the preamble of the ordinance, this controversy between the city and company is recited, and then provides:

"It is now agreed that said dispute and controversy shall be settled and said ordinance of January 10, 1901, shall be and is hereby mutually construed by the City of Covington and the Union Light, Heat and Power Company, its successors and assigns, to confer the powers, subject to the limitations herein prescribed, to-wit:

"Section 1

"Said Union Light, Heat and Power Company shall be held to have the right and authority under said ordinance to lay and maintain a main pipe through the streets and public places of the City of Covington, for the purpose of conveying natural gas through said city to be supplied at the city limits for the consumption and use in another state or elsewhere."

Section 3 of this ordinance changes and reduces the rates provided for in the ordinance of 1901 and fixes a

rate of 30 cents per thousand cubic feet in the following language:

> "It is further agreed by the parties hereto and is a condition hereof that the Union Light, Heat and Power Co., its successors and assigns, shall supply natural gas to the citizens, residents and consumers of the City of Covington, for all purposes, and to the City of Covington, if desired, at a price which shall never exceed the sum of thirty cents net per one thousand cubic feet, and in the event that the price of natural gas shall thereafter be reduced to a lower figure than thirty cents net per one thousand cubic feet in the City of Cincinnati, Ohio, for natural gas supplied in whole or in part through said main pipe, said Union Light, Heat and Power Co., its successors and assigns, hereby agree and bind themselves to supply natural gas to the citizens and consumers of the City of Covington at the same rate for like amount of consumption to consumers. . . ."

And further in section 4 the ordinance provides:

> "And if for any reason gas is not by that time as fixed in this section being received and passed through said main pipe, then said gas shall be so furnished so soon as it is received into and passed through said main pipe, and said bond shall be in like manner the binding obligation that said gas will be supplied so long as it is received and passed through said main pipe after said date. . . . Said Union Light, Heat and Power Company agrees that it will thereafter, at all times continue to supply natural gas to the citizens and consumers of the City of Covington at the prices stipulated and that it will continue to supply such gas so long as such main is used for said purpose and such gas may be had."

Appellant contends that by this contract, or amendatory ordinance of 1909, the parties did not contemplate the provided service for a term of years ending with the franchise of 1901 in 1921, but that the defendant company did thereby propose and agree, in words "as plain and strong as could be found in the English language," to furnish gas to the city of Covington at the basic 30-cent rate perpetually or for so long as this main pipe was

used, and that this obligation did not cease in 1921 when the 1901 ordinance expired.

Appellant further contends that to give this Ordinance No. 2814 of 1909 the effect of being only an amendment or construction of the ordinance of 1901, which would as such expire with the ordinance of 1901 in 1921, is to ignore the express provisions of the ordinance of 1909 that it is for the indefinite period that "so long as such main is used" that long will the company furnish gas to consumers in Covington at a price which shall never exceed the sum of 30 cents per thousand cubic feet, and the further physical fact that, after the expiration of the ordinance of 1901, and after the expiration of all subsequent franchise ordinances, it is still using the streets of the city of Covington for the purpose of transporting natural gas through said main pipe from West Virginia to Ohio, and appellant further contends that, at the time this 1909 ordinance was passed, there was no difference of opinion between the city and the gas company about its meaning being as stated, and that no one then thought or claimed that Covington was thereunder securing a 30-cent rate for only the 12 years, or until 1921, but that it was "everywhere, in town and in the council chamber," promised and believed that for so long a time as the gas company used the main pipe, so long would Covington have 30-cent gas supplied to it by the defendant company.

The appellee, on the other hand, replies that, if there was at any time merit in the construction of the ordinance of 1909 as contended for, it long since ceased; that in 1921 both parties hereto, with full knowledge of the exact point now made, did specifically, by their contract, repudiate it, and that they did this, not in general language, but by precise and definite reference to such subject matter and provision of the ordinance, and they repeated it three times in their subsequent later franchise contracts.

As both these conflicting claims, as to what was the popular belief of the citizens of Covington and the defendant gas company as to the significance and meaning of the ordinance of 1909, No. 2814, or in August, 1920, when a renewal franchise ordinance was passed, are all matters appearing only in the briefs and outside of the record, they will not be considered by us, save and except in so far as such intent and purpose of the contracting

parties are expressed and reflected in the terms of ordinances (themselves filed as exhibits), as then and later enacted, in which the city of Covington granted new and additional franchises to appellees covering the same gas service, and providing for the continued use by the defendant company of "the main pipe laid" in the city streets for its exclusive use in conveying gas through the streets of the city to the citizens of Cincinnati.

The ordinance of 1901, granting the original franchise to the defendant, by appellee it is claimed was amended by the ordinance of 1909, No. 2814, and both expired by its terms on January 10, 1921.

It is admitted that during the 12 years between its amendment and its expiration on January 10, 1921, it was in all respects carried out and complied with by both the city and the company, as to all its terms. Also, that in July, 1920, the board of commissioners of the city of Covington, having in mind the early expiration of the franchise, on January 10, 1921, advertised for bids for a new franchise to supply the city with natural gas for a period of not less than 5 years nor more than 20 years from and after January 10, 1921. This ordinance (as well as the others following and involved herein) is filed in full with the plaintiff's amended petition and also the answer of the defendant and described as Commissioner's Ordinance No. 1005.

This ordinance, after directing appropriate advertising of this franchise for sale, and that bids would be received therefor by the city recorder on or before 9 o'clock a. m., of August 26, 1920, further provided by section 1 that:

"There shall be awarded to the person, firm or corporation, its successors or assigns, making the best and most favorable bid therefor, the right, privilege and franchise to enter upon the streets, ways and public thoroughfares of the City of Covington, to lay pipes for conveying natural gas to consumers in the City of Covington, and elsewhere as herein provided."

By sections 2, 3, and 4 of this ordinance it is provided the rate to be charged per thousand cubic feet shall be stated in the bid, and the manner in which the pipes and mains are to be laid and maintained are to be specified.

By section 5 of this ordinance, the identical subject matter referred to in the expiring ordinance of 1901, as amended by the ordinance of 1900, namely, the transportation of gas through a main pipe through the city of Covington to points beyond, is covered. Section 5 is as follows:

"Should the person, firm or corporation, its successors or assigns, to whom the franchise herein provided for is awarded, at the time this contract becomes operative or subsequently, be engaged in supplying, conveying or selling natural gas to consumers in Cincinnati, Ohio, such person, firm or corporation, its successors and assigns, may lay and maintain a main pipe through the streets and thoroughfares of the City of Covington, for the purpose of conveying natural gas through the City of Covington, to consumers in Cincinnati, in the State of Ohio. Said main pipe shall be laid in the same manner and under the same supervision as other pipes are laid. Should said person, firm, or corporation, its successors or assigns, use said main pipe for supplying or conveying natural gas to consumers in Cincinnati, Ohio, after the expiration of the period for which this franchise is awarded, said person, firm or corporation, shall so long thereafter as said main pipe is so used, furnish natural gas to the consumers in the City of Covington, at the rates being charged in Cincinnati, Ohio, for natural gas supplied through said main pipe."

As this last-mentioned franchise would expire on January 10, 1926, it was deemed advisable by the city to extend the provisions of the franchise for a period of 6 months next following, and the city advertised for bids for a 6-month franchise by an ordinance substantially the same as Ordinance No. 1005, under which the expiring franchise was granted, with a slight change in section 5 of the ordinance, consisting of dropping therefrom the phrase "at the rates being charged in Cincinnati, Ohio, for natural gas supplied through said pipe line", and providing in lieu thereof in section 5 of the new ordinance the phrase "should said person, firm or corporation . . . use said pipe for supplying or conveying natural gas to consumers in Cincinnati, Ohio, after the expiration of the period for which this franchise is

awarded, said person, firm or corporation shall, so long thereafter as said pipe is so used, furnish gas to consumers in the City of Covington.''

The defendant company bid for this franchise in substantially the same languege as it bid for the 1921 franchise, including sections 2 and 3, the latter providing that ''the company shall have the right to maintain and use all its mains and pipes now laid in the city of Covington.''

This bid of the defendant company was accepted, and a franchise for 6 months granted.

In June, 1926, another similar franchise for an additional 6-month term was by ordinance advertised, bidden for, and sold by the city to the defendant company, and franchise granted it, to expire January 10, 1927.

Defendant company's franchises were thus continuously extended to January 10, 1927.

On December 2, 1926, the city commissioners enacted Ordinance No. 1855, directing an advertisement for bids for a further franchise of not less than 5, nor more than 20, years. The provisions of this ordinance are in the same language as that of the two last-named ordinances, extending the franchise over the preceding two periods of 6 months each, which were substantially the same as Commissioners' Ordinance No. 1005, except that this 1927 ordinance by its section 5, relating to use of the ''main pipe line'' through the city of Covington for the purpose of supplying gas to the city of Cincinnati, was like section 5 of the two previous 6-month extension ordinances above referred to, in providing that, ''should said person, firm or corporation use said pipe for supplying or conveying natural gas to consumers in Cincinnati, Ohio, after the expiration of the period for which this franchise is awarded, said person, firm or corporation shall so long thereafter as said pipe is so used, furnish natural gas to consumers in the City of Covington.'' It is also provided by section 5 thereof as follows:

> ''This ordinance and the bid or proposal which shall be accepted by the Board of Commissioners under the provisions hereof, and the bond to be executed by the person, firm or corporation awarded the franchise, together with the Resolution accepting the bid or proposal, shall be and constitute a contract

between the City of Covington and the person, firm or corporation, its successors and assigns to whom the franchise, rights and privileges herein provided for, is awarded.''

This ordinance also provided that the company should have ''the right to maintain and use all its mains and pipes as now laid in the city of Covington,'' and concludes as follows:

''This bid and the acceptance thereof is conditioned upon the right of the Company at the termination of said franchise period, namely, midnight of January 10, 1932, to discontinue the supply of natural gas within the City of Covington, and thereupon its rights, within the said City of Covington to supply natural gas shall cease and terminate absolutely, and it may within ninety days thereafter remove its pipes and mains from the streets, ways and public thoroughfares of the City.''

The defendant company made its bid for the franchise December 16, 1926, for a period of 5 years, which bid was accepted by appellant, and the franchise thus granted it extended to January 10, 1932.

Pursuant to this provision and reservation made in its franchise, the company in December, 1931, notified the city that it would be obliged to discontinue its service to it on January 10, 1932, unless arrangements were previously made for granting it a new franchise before January 10, 1932, when its franchise would expire.

Shortly after the receipt of this notice, appellant filed its petition and amended petitions in the Kenton circuit court, setting out the facts regarding the several franchises granted by it to the defendant, and making the claim that the 30-cent basic rates provided by the amendatory ordinance of 1909 were still in force and effect, and should control in securing from defendant company continued service at such 30-cent rate or in the granting of a new franchise at such rate because of defendant's obligation assumed by 1909 ordinance to ''never charge it a higher rate so long as it used said main pipe,'' and sought an injunction to restrain the company from carrying into effect its notice given of its intention to discontinue its gas service to the city at

midnight of January 10, 1932, and further asked a declaration of its rights under the several ordinances or franchise contracts had with the appellee for its instruction and guidance in letting a further franchise for the distribution and sale of gas to its citizens.

The defendant company demurred to this petition and also filed its answer, setting out therein verbatim the several franchises named above granted it by the city.

Appellant in turn filed demurrer to the second paragraph of the answer, and the cause was submitted on the pleadings, and judgment rendered denying the injunction asked and dismissing its petition, but, for the purpose of reviewing this judgment, it was ordered that the temporary injunction be continued in effect to enable appellant to secure an order of injunction pending appeal, and the status quo maintained pending its final determination.

From this judgment this appeal is prosecuted. It presents for our consideration and determination only a question of law, which involves alone, it appears, the construction of these several ordinances in question.

Appellant contends that Ordinance No. 2814, enacted in 1909, did by the phrase used in section 3 thereof, whereby the defendant company agreed that it would supply the citizens of Covington natural gas "at a price which shall never exceed the sum of 30c net per thousand cubic feet," and its further agreement set out in said ordinance that it would "thereafter at all times continue to supply natural gas to the citizens and consumers of the City of Covington at the prices stipulated and that it will continue to supply such gas so long as such main is used for said purpose and such gas may be had," represented the company's agreement to furnish gas at such price in consideration of the city's agreement to permit it to lay and use a main pipe line under the streets of Covington for conveying its natural gas from its West Virginia fields to the citizens of Cincinnati, Ohio.

It further contends that this right granted the defendant company to so lay a main pipe line under its streets was not the granting to it of a franchise, because the ordinance granting this right did not advertise and sell the right as required by section 164 of the Constitution for the granting of franchises. The constitutional

provision of section 164 (which should be read with section 163 thereof) is as follows:

"No . . . city . . . shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise . . . such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder."

Appellant further contends that, under the provisions of Ordinance 2814 of 1909, the city's permission was given the company to lay this "main pipe line" under its streets, and that the company did, pursuant to such permission, authority, or license given it, lay said main line through the streets of its city upon its agreement and promise given in consideration of this right to thereafter or so long as it used such main pipe line, charge the city of Covington for natural gas furnished not exceeding the basic rate of 30 cents per thousand cubic feet. The defendant company laid this main pipe and has continuously used it to convey its gas to the city of Cincinnati, and is now so using it and the appellant contends that it is therefore obligated to continue to supply the city of Covington its gas at the stipulated rate of 30 cents per thousand cubic feet, and must continue to furnish its gas service to the city at such rate so long as it continues to use said main, claiming such result is the substance and effect of the company's contract with the city had under the provisions of its ordinance of 1909, described as Ordinance No. 2814. Appellant contends that, regardless of whether this ordinance of 1909 was an amendment of the city's earlier ordinance granting the defendant company a 20-year franchise in 1901, or whether the same was void as a franchise through not complying with the provisions of section 164 of the Constitution, it did yet serve to procure the right or license from the city under its terms to lay the said main pipe through its streets, whether such right be described as a license or an easement or a franchise grant to it of such permission or privilege is immaterial, as it must none the less continue to pay appellant the promised consideration therefor, to wit, a 30-cent basic gas rate as promised by it to the city in consideration therefor, and that such contract had between them is now and will

remain in effect indefinitely or so long as the city does not revoke the license given the defendant company to use its streets for said main pipe line, or render the defendant unable to perform its undertaking to furnish it natural gas, at the stipulated 30-cent rate, through its granting of such a gas franchise to another; thus thereby denying and depriving the defendant company the use of its streets for its gas mains or the necessary means whereby it could continue its service of furnishing gas to the city.

Appellant further grounds his claim that the ordinance of 1909 is still in effect, and has not been succeeded or abrogated by the later four franchises covering the same subject matter as the 1909 ordinance upon the contention that such later ordinances under which such successive and continuous franchises were granted the defendant company, were void, for the reason that the city by such ordinances granted franchises to the defendant company without consideration therefor, whereby, to the prejudice of its citizens, it surrendered, for higher gas rates, the advantage and benefit of the low rates secured for them under the terms of the 1909 ordinance; and, further, that said later ordinances were void, for the reason that the city in advertising their sale prescribed as a condition thereof, upon which would-be purchasers should bid therefor, that the purchaser of the franchise would be by implication required to lay 50 or 75 miles of gas pipes through the city to begin operating and supplying gas within a few days after securing the franchise, or, in short, imposed such conditions through the brief time thereby allowed for beginning to operate, and upon which the franchise would be sold, as made it possible for only the defendant company, through having sold 50 or 75 miles of gas pipes already laid within the city of Covington, to bid for the franchise, and thus gave defendant company such undue advantage as prevented competitive bidding, in violation of section 164 of the Constitution, and rendered the franchises sold under such terms void.

In considering and endeavoring to dispose of these contentions thus presented by the appellant, we deem it helpful in arriving at what was the real nature and effect, and in interpreting the legislative intent or finding of the city's Ordinance No. 2814, enacted in 1909, to consider the circumstances and purpose of the parties lead-

ing to its enactment as same are recited and set out in its own terms and language.

By the caption of said ordinance, it is stated that its purpose is to construe Ordinance No. 2043, enacted in 1901, under which a gas franchise was granted to the Covington Gas Light Company. Under this franchise, it was provided that the grantee thereof should have the right to lay its gas mains and pipes in the streets of the city of Covington for the purpose of furnishing gas to consumers "in and out of" the city of Covington, and that the gas to be so supplied should be "manufactured in the city of Covington, unless it should be natural gas." Said ordinance of 1909 further recited that this original franchise had been assigned by its grantee to the defendant company, which acquired natural gas which it desired to furnish to the citizens of Covington under its franchise. Defendant company also desired to lay a main pipe through the streets of Covington in which to convey such gas to the citizens of Cincinnati under the provisions of its charter to furnish it to consumers "in and out of the city of Covington." The ordinance further recites in its preamble said defendant company "has purchased pipe to be laid in the streets of the city of Covington for that purpose and is now desirous of using same and the city of Covington is not desirous of obstructing said company unnecessarily, but insisting upon its right to protect the citizens of Covington in the use of its streets, it is now agreed that said dispute and controversy shall be settled and said ordinance of January 10, 1901, shall be and is hereby mutually construed by the city of Covington and the Union Light, Heat & Power Company, its successors and assigns, to confer the powers, subject to the limitations herein prescribed, to-wit:

"Section 1

"Said Union Light, Heat & Power Company shall be held to have the right and authority under said ordinance to lay and maintain a main pipe through the streets and public places of the city of Covington, for the purpose of conveying natural gas through said city to be supplied at the city limits for the consumption and use in another state or elsewhere."

This language of the ordinance clearly shows the situation of the parties at the time of the enactment of the 1909 ordinance purporting to amend the ordinance of 1901 granting the 20-year franchise.

Defendant company contended that it had the right under the terms of the original franchise to lay its main line in question through the city's streets. The city suffered the detriment of surrendering its contention that such franchise did not embrace such right to use its streets in consideration of the company's promise and agreement to lower the basic gas rates stipulated in the original franchise, and substitute therefor the basic 30-cent rate for the gas to be furnished the citizens of Covington under its franchise.

Had the ordinance of 1909 been the first and original ordinance under which it was sought to convey a franchise to the defendant company, it might be conceded that it would not have constituted a compliance with the requirements laid down in sections 163 and 164 of the Constitution, and therefore would have been void as granting a franchise, and, had the defendant company acted under the authority of such 1909 ordinance, only purporting to give it the right to lay its gas main in its streets, and had laid the same under such assumed permission or license of the city to do so, the case in its facts might have been analogous to those presented in the case of Bastin Telephone Co. v. Mount, 176 Ky. 26, 195 S. W. 112, 113, strongly relied on by the appellant herein. In that case it appears the city of Lancaster granted to the Bastin Telephone Company the privilege of establishing a telephone exchange in its city. In March, 1902, a contract was entered into between the parties by which the telephone company obligated itself to furnish telephone service to the citizens of Lancaster at a rate not to exceed $1 per month for each telephone. Acting under the authority of this contract, the telephone company built a large exchange and secured some 600 subscribers, whereupon it increased its rate above that fixed by the contract. When suit was filed to enjoin the raising of the rate, to compel the company to render service at $1 per month so long as it operated its exchange in the city, the court said:

"Since the alleged franchise is absolutely void, it is argued that the contract between the city and the company is invalid for every purpose, and if not

binding on the city, is not binding on the company. It must not be forgotten, however, that although the city has the right, upon reasonable notice, to withdraw defendant's privilege, and the defendant has the corresponding right to discontinue the operation of the exchange, neither party has taken any steps looking in that direction. On the contrary, the defendant is actually enjoying the privilege of operating a telephone exchange in the city under a license which has never been revoked. Under these circumstances we conclude it cannot enjoy the privilege and at the same time repudiate the conditions under which that privilege is enjoyed. Having entered the city, occupied its streets, and constructed its exchange under an agreement to furnish telephone service at a rate not exceeding $1 per month, it will be required to maintain the rate so fixed so long as it continues to furnish such service. Postal Telegraph Co. v. City of Newport, 160 Ky. 244, 169 S. W. 700; Cumberland Tel. & Tel. Co. v. City of Calhoun, 151 Ky. 241, 151 S. W. 659.''

We fully indorse and reaffirm this statement of the law as applicable to and governing such state of facts presented and decided in the Bastin case, but we are of the opinion that the contention of appellant herein is based upon facts much different, and that the 1909 ordinance was enacted by the city, and bidden for, and bought by, the defendant company as being only the construction and amendment of the original franchise of 1901, which could be done by ordinance, certainly so far as it lowered the service rates as provided by it, and further permitted the defendant to lay its main pipe lines as in the exercise of a right so to do granted it by the city under the terms of the original franchise, which had been granted with due observance of, and compliance with, section 164 of the Constitution. It follows from this, and we further conclude, that the phrases used in the 1909 ordinance, to wit, that in section 3 thereof agreeing that natural gas would be furnished by the defendant ''at a price which shall never exceed the sum of 30c net per thousand cubic feet'' and further agreeing that it would ''thereafter at all times continue to supply natural gas to the citizens and consumers of the city of Covington at the price stipulated . . . so long as said main is used for said purposes and such gas may be had,'' were

employed and used therein in reference to the provisions of the original franchise of 1901, of which this 1909 ordinance and its terms and language therein used was intended and meant to be amendatory only, and that its said quoted words or phrases as they appear in the sections of said amendatory ordinance are not to be construed as used independently of such amendatory limitation or as having the effect of meaning or promising to furnish gas at such rate, or at all, indefinitely to the citizens of Covington in consideration of laying its main pipe in its streets or any other consideration, for the reason that to so hold would in itself be a violation of the provision of section 164 of the Constitution limiting the franchise to a period of 20 years.

So construing the provisions of this mandatory ordinance of 1909, and that as such it became ancillary to or a part of the original franchise of 1901, it must follow that it expired with the franchise of 1901, namely, on January 10, 1921.

Upon the expiration of this 1901 franchise, the defendant had no further right to continue in the use of the city streets, nor the city any further right to exact gas service from the defendant except in so far as they might arrange under the terms of a new franchise should the city and the defendant company then desire to further contract with each other for gas service.

It is reasonable to suppose, under these circumstances, that, had the city and the defendant company then believed that the arrangement made between them under the provisions of the 1909 ordinance was still in effect, and that the city was thus in a position to demand a continuation of the gas service by the defendant at the basic rate of 30 cents as therein provided, it would not have surrendered such advantage to the detriment of its citizens by granting a new franchise, providing higher rates of gas service, and also extending to the defendant the same continued right to lay its main pipe through the streets of its city. The contemporaneous construction put upon the provisions of the 1909 ordinance very clearly shows that the parties themselves did not understand or believe that this ordinance providing the low 30-cent gas rate in exchange for the city's conceding defendant's asserted claim that the company had this disputed right under its original franchise to lay its main pipe in its streets, continued or remained in effect longer

than the original ordinance of 1901, of which it was amendatory, which expired in 1921.

The appellant and appellee, having thus upon the expiration of the 1901 franchise, as amended by the 1909 ordinance, No. 2814, granted a new franchise covering precisely the same subject matter of the earlier franchise, including defendant company's thereby-conceded right to continue its use of its main line through its streets upon the terms and stipulations provided in a new franchise, and having further, upon the expiration of this new 5-year franchise, then granted the defendant company three additional franchises covering the same subject matter, and each containing in turn similar provisions for the continued exercise by the defendant company of the right to use its main line for conveying gas to Cincinnati, and all of said four franchises so granted subsequent to the expiration of the 1901 and 1909 amendatory ordinances and all of said franchise having now been carried out and executed by the parties hereto, and each having received its consideration as therein provided therefor, the court would be exceedingly loathe to now give such construction to such earlier 1909 ordinance as would invalidate their acts or be at variance with their plainly expressed intention declared in such later franchises. The city and gas company have now concluded their contracts, or these succeeding franchises, under a construction of them mutually concurred in and adopted, and acted upon what was the obvious intendment of the ordinances, and stronger reason would have to prevail than that herein appellant has advanced to induce us at this late hour to say that these ordinances meant something else from what the parties thereto supposed they meant and performed as meaning. "Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling influence." Old Colony Trust Co. v. Omaha, 230 U. S. 118, 33 S. Ct. 967, 972, 57 L. Ed. 1410; Chicago v. Shelden, 9 Wall. 50, 19 L. Ed. 594; Brooklyn Life Insurance Co. v. Dutcher, 95 U. S. 269, 24 L. Ed. 410; District of Columbia v. Gallaher, 124 U. S. 505, 8 S. Ct. 585, 31 L. Ed. 526.

Appellant insists that there is a line of what he terms "rate cases" in Kentucky, where the identical questions presented in the instant case have been considered. He contends that these cases maintain the legal proposition

that, while two parties sui juris may ordinarily abrogate their contract, yet a contract between a city and a public utility, being made for the benefit of third parties, can only be abrogated when the considerations are surrendered, and therefore that the contract of the 1909 ordinance, being an enforceable contract, could not be abrogated by any subsequent agreement between the city and the company, unless the company surrendered its rights under the contract, and that it is shown by the rule of law announced in these rate cases that the city may increase the rates fixed by an existing contract only when there has been an additional consideration paid therefor; while in the instant case he contends no consideration was paid for the increased rates and the subsequent contracts or franchises made in January, 1921, and afterwards. From a careful consideration of the opinions delivered in these "rate cases," among which is cited City of Hopkinsville v. Jarrett, 156 Ky. 777, 162 S. W. 85, 50 L. R. A. (N. S.) 465; Bastin Telephone Co. v. Mount et al., 176 Ky. 26, 195 S W. 112; Cumberland Telephone & Telegraph Co v. City of Hickman, 129 Ky. 220, 111 S. W. 311, 33 Ky. Law Rep. 730; Louisville Home Tel. Co. v. City of Louisville, 130 Ky. 611, 113 S. W. 855, 861; Gathright v. Byllesby & Co., 154 Ky. 106, 135, 157 S. W. 45, 58; Lutes v. Fayette Home Telephone Co., 155 Ky. 555, 160 S. W. 179; Johnson County Gas Co. v. Stafford, 198 Ky. 208, 248 S. W. 515, we do not find any principle of law announced or applied in their decision in conflict with what we have deemed the applicable rule of law in determining our decision of the instant case. Without discussing these in detail, it is sufficient to say that it was therein held that ordinances regularly passed by the city councils, providing a different or even higher rate than originally stipulated in the franchise, were yet valid and not ultra vires; that the legislative boards had the right to amend and change the service rates provided by the then existing franchises, where same was done by the boards even upon no other consideration than that of securing the advantage and convenience to its citizens of a continuance of a needed public utility service, inasmuch as authority was given such boards to legislate by ordinances, and also repeal or amend them; and the exercise of such authority by it, even in the case of amending the rate provisions of an existing franchise, would not be an invalid act, but would be construed and interpreted as an act properly done by the board in furtherance of the

welfare of the public which such board served, in the absence of fraud, which would not be assumed; also, that such amendments by ordinance of franchise service rates were held valid, even though they were enacted without regard to, or in compliance with, the provisions of section 164 of the Constitution, as such amendatory ordinances changing rates were not construed as creating new franchises.

The rationale of these cases would support the validity of the provisions of the ordinance of 1909 in the instant case, as being only amendatory of the 1901 franchise, especially as the rates thereby secured were lower, not higher, than the service rates provided in the original franchise, and which like state of facts existed in the Cumberland Co. v. City of Hickman case, supra, where forfeiture waiver was made in consideration of lower basic rate of service charge.

In the case of Union Light, Heat & Power Co. v. City of Ft. Thomas et al., 215 Ky. 384, 285 S. W. 228, 229, recently before this court, the appellant company was engaged in distributing and selling gas through its mains and pipes in the city of Ft. Thomas to the municipality and other consumers. The franchise under which it began to operate was granted by the city in 1915 for a term of 10 years. Before its expiration, September 5, 1925, the city advertised a new gas franchise for sale, and appellant made a written proposition of purchase upon a higher level of price for gas to the consumer. Conceiving the prices to be unreasonable, the city council declined the bid, and did not sell the franchise, whereupon the gas company on August 5 gave 30 days' written notice to the city of its purpose to discontinue the supply of gas to the city upon the expiration of its franchise at midnight, September 5, 1925. On that date an action was instituted, and a temporary restraining order issued, enjoining appellant company from turning off the gas until the court could hear the case. The company, in obedience thereto, continued to supply gas as it had done under the franchise, but moved to set aside the restraining order, which was overruled, and an injunction allowed.

The suit was instituted upon the theory that the gas company, being a public service corporation and having exercised the right of laying its mains and pipes in the streets of the city and selling gas to the city for 10 years,

was without the right, even on the termination of its franchise, to withdraw from business in the city and cease to supply gas as before. The opinion recites that "several cases are cited and relied upon as authorizing and empowering municipalities, situated as appellee, Ft. Thomas, to require gas company having plants in a city to continue to supply gas to the municipality . . . after the expiration of the contract, because the company had, in a sense at least, a monopoly upon the supply of gas, owning the mains and pipes under the surface of the street, and must supply the commodity which no other concern can supply on equal terms, and not turn the city and its people back to antiquated methods of oil lights and coal ranges." The court, however, held that, where the gas company forfeits or loses its right to exercise the privilege of distributing and selling gas in a city, it may withdraw therefrom, removing all of its equipment, although the city and its inhabitants may not consent thereto. The case of East Ohio Gas Co. v. Akron, 81 Ohio St. 33, 90 N. E. 40, 26 L. R. A. (N. S.) 92, 18 Ann. Cas. 332, is cited with approval of the rule announced therein that, "when a municipal corporation, by ordinance, gives its consent that a natural gas company may enter the municipality, lay down its pipes therein, and furnish gas to consumers upon terms and conditions imposed by the ordinances, which are accepted in writing by the company, such action by both parties constitutes a contract, and the rights of the parties thereunder are to be determined by the contract itself . . . but, so long as such gas company continues to exercise any of its franchise within the contracting municipality, it may be compelled to exercise its franchise therein fairly and without discrimination"; further declaring that "a franchise is but a contract between the city and the gas company, binding upon each and cannot be impaired either by legislation or the court. No state shall pass any law, says the Constitution of the United States, impairing the obligation of contract." It was therefore held that the lower court erred in granting the injunction restraining the gas company from turning off the supply of gas.

In the instant case, there is reserved by the terms of the franchise contract itself the right of the company, upon the expiration of its contract, to discontinue the service and withdraw its equipment, but it was also a constituent part of this contract that should the defend-

ant company, after the expiration of its franchise, continue to use its main line laid by it in the streets of the city of Covington, for so long as it used it, it would con-continue to furnish gas to the citizens of Covington.

Appellee, relying upon the terms of its franchise as a contract with the city, must, while relying and basing its claims upon it, in good faith also perform all of its conditions as well as that one of its provisions allowing it to discontinue its service and withdraw its equipment.

It may in this connection be suggested that, had the appellant seen fit to observe and comply with the provisions of act (chapter 137, p. 664, Kentucky Acts 1926), providing for the renewal of franchise of public utilities companies, which act of the General Assembly directs that "at least eighteen months before the expiration of any franchise, acquired under, or prior to, the present constitution, it shall be the duty of the proper legislative body or boards of all cities and towns of this Commonwealth, except cities of the first class, to provide for the sale of a similar franchise to the highest and best bidder on terms and conditions which shall be fair and reasonable to the public, to the corporation and to the patrons of the corporation . . ." (section 1), to the end that the confusion and inconvenience now suffered and experienced by the appellant could have been obviated. Being of the opinion that our decision, as hereinabove made, construing the 1909 ordinance as being amendatory of the 1901 franchise, is conclusive of the material question herein, we deem it is unnecessary to pass upon the other questions herein raised, and the same are expresly reserved for further consideration and decision, should they later be presented.

In an even more recent case of the City of Ludlow v. Union Light, Heat & Power Co., 231 Ky. 814, 22 S. W. (2d) 909, the city of Ludlow, a short while before the expiration of its franchise contract with the defendant, provided for the sale of a new franchise and bids were asked for. The defendant company alone filed a bid, which provided for a basic rate of 80 cents per 1,000 cubic feet, whereas the basic rate in the old franchise was 40 cents. The bid was rejected, and, upon notice being given by the city that the company would "discontinue, terminate and withdraw" its gas service upon the expiration of its existing franchise, the city filed suit to enjoin the discontinuance. The lower court denied the

injunction, and upon an appeal therefrom, this court said:

> "The grant and acceptance of a franchise is but a contract, and its obligations are binding on both parties. A contract expires according to its terms. In accordance with the constitutional limitation, the contract entered into between appellant and appellee in 1909 expired at the end of 20 years. There was no contractual relation between the parties after that period. Board of Education of Somerset v. Kentucky Utilities Co., 231 Ky. 484, 21 S. W. (2d) 817. It is universally held that, when a franchise contract terminates, the mutual rights and liabilities are at an end. The property used by the franchise owner does not cease to be its property, and it has the right to remove it from the streets, and, upon failure to exercise that right, may be compelled to do so. However, the courts in the interest of justice and equity have held that a reasonable time should be given for the removal of the physical properties, for, obviously, there could be no instant removal on a discontinuance of the service; also under some circumstances courts of equity have interposed their powers to prevent a discontinuance of service for the time being, as has been done in this very case, until the rights of the parties could be fully adjudicated."

Concluding, as we do in the instant case, that the 1909 ordinance was merely amendatory of the 1901 20-year franchise, and its rate provisions expired therewith, and that the later franchises thereafter granted the defendant having also expired, according to their terms the contractual relations had thereunder between the parties after that period ceased to exist, and therefore the appellant company was within its contract rights in giving notice to the city that it would discontinue its service upon the expiration of its franchise on January 10, 1932, but, as there was also a further provision in its franchise contract that if, after its termination, the defendant should continue to use the streets of the city for its main pipe, it would continue, for so long as it used the same, to supply Covington with gas, it must also comply therewith; that is, the rights of the parties under their franchise must be regulated and determined by all of its terms rather than a chosen part or selected provi-

614

sion thereof. However, as in this case the same situation exists as was presented in the Ludlow case, supra, we deem it proper to herein direct, as was therein directed, that, "in view of the circumstances and the great inconvenience, and perhaps hardship, to the citizens which would result from an immediate discontinuance of the gas service, a reasonable time should be granted for an adjustment of the situation after this final adjudication. The court will continue in force for 60 days after the date of this opinion the injunction heretofore entered prohibiting a discontinuance of the service."

It is accordingly herein so ordered. Subject to these limitations, the judgment of the lower court is affirmed.