## Inland Navigation Company, et al. v. American Surety Company of New York.

(Decided February 15, 1921.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Principal and Surety—Nature and Extent of Liability of Surety.—
   The surety is not bound if the obligee violates the terms of the
   suretyship.

2. Principal and Surety—Contract of Surety Company.—While a con-
   tract of a surety company for pay is not construed as strictly in
   favor of the surety as a voluntary contract of like nature, never-
   theless the surety will not be bound if the obligee in the bond
   breach its material terms.

3. Principal and Surety—Discharge of Surety.—Where the contract
   of suretyship required the obligee in the bond to retain a certain
   per centum of the contract price of a boat to be built until the
   vessel was inspected and accepted after notice to the surety and
   the obligee violated this part of the agreement and paid the full
   contract price to the builder, the surety is relieved of liability on
   the bond.

DUFFIN, VANCE & DUFFIN for appellants.

FAIRLEIGH & FAIRLEIGH and W. PRATT DALE for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON.—Affirming.

The Inland Navigation Company, etc., entered into a contract with the Howard Shipyards Company in 1915, whereby the shipyard company agreed and undertook for a named consideration to build and launch for the navigation company a boat or barge of certain dimensions and character. The shipyards company agreed to and did execute a bond in the sum of $35,000.00 to the navigation company, conditioned for the faithful performance of the contract to build and launch the boat, and the appellee, American Surety Co., of New York, became and is the surety on the bond.

Among the terms of the contract to build the boat are the following:

"Immediately upon the acceptance of this proposal, there shall be due and payable the sum of ten thousand dollars ($10,000.00) on account, the balance of the contract price, plus extra orders to be paid as follows:

Five thousand dollars ($5,000.00) upon the arrival of all the steel needed in the construction of this barge at the shipyard of the builder; five thousand dollars ($5,-000.00) upon riveting of the hull after the hull is generally erected, and five thousand dollars ($5,000.00) after the successful launching. The balance to be paid after the *inspection by the owner or his agents,* which inspection is to be made upon written notice from the builder that the hull is complete and ready for inspection.

"The builder is to furnish a satisfactory bond to cover this contract, to the owner."

The guaranty bond contains the following provisions:

"First: That in the event of any default on the part of the principal, a written statement of the particular facts showing such default and the date thereof shall be delivered to the surety, by registered mail, at its office in the city of Louisville, Kentucky, promptly, and in any event within ten (10) days after the obligee or his representative, or the architect, if any, shall learn of such default; that the surety shall have the right within thirty (30) days after the receipt of such statement to proceed, or procure others to proceed, with the performance of such contract; shall also be subrogated to all of the rights of the principal; any or all moneys or property that may at the time of such default be due, or that thereafter may become due to the principal under said contract, shall be credited upon any claim which the obligee may then or thereafter have against the surety, and the surplus, if any, applied as the surety may direct.

"Fourth: That the obligee shall faithfully perform all the terms, covenants and conditions of such contract on the part of the obligee to be performed; and shall also retain that portion, if any, which such contract specifies the obligee shall or may retain of the value of all the work performed or materials furnished in the prosecution of such contract, until the complete performance by the principal of all the terms, covenants and conditions of said contract on the principal's part to be performed."

It is alleged in the petition that the navigation company paid to the shipyard company, pursuant to the contract, prior to April 5th, 1916, the sum of $10,000.00, $5,000.00, $5,000.00 and $5,000.00, or a total of $25,000.00, on the original contract price of the barge, and the additional sum of $2,500.00 on extras; that the shipyard company failed to complete the hull of the barge, or deliver it until April 5th, 1916, a wrongful delay of seven months; that by reason of the wrongful delay the navigation company has been damaged at the rate of $5,000.00 per month or a total on this item of $35,000.00; that on April 5th, 1916, the navigation company made demand of the shipyard company for the delivery of the barge but the shipyard company declined to deliver the same until its claim for the balance of cost of construction of the boat, $28,371.13, was paid to it.

Thereupon the two said concerns entered into the following writing:

"That the Howard Shipyards Company, of Jeffersonville, Indiana, is asserting that in the matter of the construction of the barge 'Inco. No. 1,' there is a balance due it from the Inland Navigation Company, of St. Louis, Missouri, of twenty-eight thousand three hundred seventy-one and 13-100 dollars ($28,371.13), as of April 1, 1916, This does not include cash advanced, materials furnished and labor performed during March and April, 1916, in all respects.

"The Inland Navigation Company denying that it is so indebted, in the premises, the said Inland Navigation Company has this day paid to the Howard Shipyard Company, and the said Howard Shipyard Company does acknowledge receipt of same from said Inland Navigation Company the aforesaid sum. And the said Howard Shipyard Company has delivered possession of said barge to said Inland Navigation Company, the receipt of

which is hereby acknowledged by said Inland Navigation Company.

"This writing is executed and delivered in duplicate, at Jeffersonville, Indiana, this April 5, 1916, one copy for each of the parties hereto."

These writings were all made a part of the petition, to which the defendant, now appellee, surety company, demurred, and its demurrer was sustained to the petition, as twice amended. The navigation company declining to plead further its action was dismissed as to the guaranty company, and it appeals to this court.

If the surety company is liable at all it is because of the bonding contract copied above, and not otherwise.

In an action on a bond written by a surety company for a premium, if the bond is susceptible of two constructions, the one most favorable to the obligee will be adopted, and such a surety will not be released from liability where the departure or alteration in the contract is not shown to be a material one, but this latter rule does not apply to voluntary and gratuitous sureties.

"In this day and age of corporate sureties, the burden is lightened by the payment of adequate premiums, and their final liabilities are oftimes secured by counter indemnity. As a result of this new condition of affairs the trend of all modern decisions, federal and state, in the construction of the law appertaining to sureties is to distinguish between individual and corporate suretyship, where the latter is an undertaking for money consideration by a company chartered for the conduct of such business. In the one case the rule of *strictissmi juris* prevails as it always has, that is, the contract of an individual surety, or a 'voluntary surety,' as he is spoken of in some cases, will be strictly construed and all doubts and technicalities resolved in favor of the surety, such person being regarded as a favorite of the law. But in the other case, because it is essentially an insurance against risk, underwritten for a money consideration by a corporation adopting such business for its own profit, the contract will be construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect." 21 R. C. L., p. 1160; 32 Cyc. 306-7.

By the terms of the bond and contract, the fulfillment of which is guaranteed, it was the duty of the navigation company to retain a certain part of the cost of the construction and launching of the boat until inspected and

found satisfactory by the owner after due notice to the surety company. After the payment of the $27,500.00 provided for in the contract, the shipyard company claimed a balance due it of $28,371.13, and refused to deliver the barge until that sum was paid and on April 5, 1916, without notice to the surety, in order to facilitate the delivery of the boat which was urgent, this sum was paid to the builder.

Because of the payment of the entire balance the surety company claims its discharge from liability, for it says this was a material and substantial violation of the terms of both the contract and bond. On the other hand the navigation company insists that the payment was made partly to minimize the damages which were accruing daily, on account of the failure to deliver the boat, at the rate of $5,000.00 per month, and since this was a benefit and not a detriment to the surety company it cannot complain.

The surety company, only guaranteed the performance of the contract to complete the boat, on certain conditions. It was not liable for a breach of the contract if the obligee in the bond failed to keep faith with the surety. The rule is well settled in this jurisdiction that a surety, even for pay, is not bound if the principal obligee failed to comply with the material and substantial provisions of the contract, the faithful performance of which is guaranteed.

This is the generally accepted rule throughout the country, though there are a few exceptions:

"It is fundamental that any agreement or dealing between the creditor and the principal in an obligation of debt, which essentially varies the terms of the contract, without the consent of the surety, will release the surety from liability. . . . When his contract is changed without his knowledge or authority, it becomes a new contract and is invalid, because it is deficient in the essential element of consent. And it has been held that it is not of any consequence that the alteration of the contract is trivial, or even that it is clearly for the advantage of the surety, if it appears that it varied his responsibility, and was without consent. It is the surety's right to determine for himself what is, or is not, for his benefit. . . . Many decisions stating the general rule employ the word 'material' and hold that any material change in the contract made by the principal parties to it, without the assent of the surety, discharges the latter.

. . . It is a general principle that any material alteration in a building contract will release non-consenting sureties given to guarantee the faithful performance of the contract, and to protect the owner against any claims or liens for labor or materials used in the construction of the building. . . . So generally the courts declare broadly that the owner's failure to retain, until completion of the building, a specified percentage of the price of labor and material, as required by the contract, discharges the surety absolutely, and not merely to the extent of the premature payment. 21 R. C. L., pp. 1004, 1007 and 1013; see also 32 Cyc. 174.''

This court in the case of the Champion Ice Mfg., etc. Co., v. American Bonding and Trust Co., 115 Ky. 863, held a contract of suretyship for compensation, similar to the one under consideration a contract of insurance which should be construed strictly against the guarantor or insurer.

In the recent case of Pond Creek Coal Co. v. Citizens Trust and Guaranty Co., 170 Ky. 601, we held:

''A surety has the right to insist on a strict performance of the contract which he secures, and although this rule may not apply with the same strictness to a paid surety as it does a voluntary one, the paid surety will be released unless there has been a substantial performance of his contract by the one secured.

''The general rule is the party secured or guaranteed must exercise the utmost good faith in all of his dealings with the principal obligor and strictly comply with the terms of the contract secured, and any failure on his part to do this will result in the release of the surety. This general rule is stated in Brandt on Suretyship and Guaranty (third edition), vol. 1, section 106.

''It is well settled and undisputed law that a surety is only bound by the terms of his contract; and that if the creditor does any act which, in contemplation of law, alters the surety's liability, increases his risk, or deprives him, even for a moment, of the right to pay the debt and assume the position of creditor, or of his right to seek indemnity, the surety is thereby discharged, and the fact that the surety may not have been actually injured is immaterial. See also Commonwealth v. Bacon, 33 Ky. Law Rep. 935; Graziani v. Commonwealth, 30 Ky. Law Rep. 119; Sneed's Exor. v. White, 3 J. J. Mar. 526; Illinois Surety Co. v. Garrard Hotel Co. (Ky.), 118 S. W. 967;

Elsey v. Peoples Bank of Bardwell, 166 Ky. 386.'' See also Vanmeter v. Corcoran, 11 Ky. Opin. 15.

The payment of the balance, $28,371.13 by the owner to the builder, without notice to the surety company, even under protest, was a material violation of the terms of the contract, for it took away from the surety company the fund which it had the right to expect to be applied to the payment of any loss sustained by the navigation company, if any, or to the fulfillment of the contract according to its terms, if the contract had not been fulfilled. This was such a disregard of the rights of the surety as worked a release of it from further obligation.

Counsel for appellant frankly admit in the outset of their argument, that if this court is to adhere to the rule announced in the case of the Pond Creek Coal Co. v. Citizens Trust & Guaranty Co., *supra,* the judgment in this case must be affirmed. We believe that opinion sustained by the great weight of authority in this country and see no reason to recede from the principles there announced, and we do not. .

Judgment affirmed.