## New York Indemnity Co. et al. v. Hurst et al.
(Decided Dec. 15, 1933.)

60

JESSE MORGAN for appellants.

CRAFT & STANFILL, W. W. REEVES, T. E. MOORE, J. A. SMITH and G. C. WILSON for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal had its origin in litigation growing out of the construction of the Hurst Hotel and hospital building, in Hazard, Ky. It appears that when this property was acquired by Dr. Hurst it consisted of two lots upon one of which stood a three-story hotel building, while upon his adjoining lot there remained standing only the walls of a structure previously burned. Plans and specifications for the improvement of the property were prepared by A. L. Ware, architect, for the erection of a five-story building on the vacant lot and the remodeling of the adjoining building by extending a fourth story thereto. The new building was to be used as an office building and hospital in connection with the added fourth floor of the old building as a part of the hospital. After these plans had been worked out by the architect, Dr. Hurst entered into a contract with R. W. Owens, doing business under the trade name of the Hazard Plumbing & Supply Company, on July 13, 1929, to install a heating plant and plumbing fixtures in the proposed new building, and also on August 6, 1929, entered into a contract with E. C. & T. S. Todd, a partnership of Richmond, Ky., doing business as Todd Bros. Construction Company, for the erection of the proposed new Taylor Hurst building. It further appears, however, that at the time of Dr. Hurst's

contract with the Hazard Plumbing & Supply Company (operated by R. W. Owens), that the latter executed an indemnifying bond to him in the penal sum of $8,753.42 with the appellant, the New York Indemnity Company, as his surety, for the faithful performance of his contract; also, that Todd Bros., upon entering into their written contract with Dr. Hurst for the hospital building's construction, did, as thereby required, execute an indemnifying bond to him with the same, New York Indemnity Company, as its surety, in the penal sum of $20,000 for the faithful performance of its building contract. The work was then begun and continued until practically completed along about the middle of February, 1930, when possession thereof was taken by Dr. Hurst, and when also it developed that certain materialmen's accounts were then outstanding and owing by both contractors, Todd Bros. and R. W. Owens, for materials sold to and used by them in the construction and plumbing work of this building. These materialmen's liens were asserted and perfected by filing proper statements of their claims under the Mechanic and Material Men's Lien Law, section 2463, Kentucky Statutes. Payment of these lien claims having been by these creditors demanded and refused, one of the lien creditors, Ben F. Hurst, doing business as B. F. Hurst & Co., filed his petition in equity against Dr. Hurst and the contractor, R. W. Owens, on May 26, 1930, to whom he had sold certain plumbing material, seeking judgment upon his lien claim against Owens and also its enforcement against the property of Dr. Hurst upon which used. Further, by amended petition, certain other named lien holding creditors were made defendants together with the appellant New York Indemnity Company, in which judgment was sought against it, under the bond it had signed for the Hazard Plumbing & Supply Company, operated by R. W. Owens. All the lien holding creditors and contractors, both Todd Bros. and Owens, having by the pleadings been made defendants, filed appropriate responsive pleadings, and enforcement of personal judgments against the contractors, Todd Bros. or Owens, to whom they had sold the materials going into the building's construction and also against the appellant the New York Indemnity Company, as surety upon their indemnifying bonds, and for enforcement of their materialmen's lien claims against the property of the appellee Dr. Hurst. On September 20,

1930, the appellee Dr. Hurst filed answer to plaintiff's petition, and cross-petitions of defendant lienholders, and also a cross-petition against his contractors, R. W. Owens, doing business as the Hazard Plumbing & Supply Company and against E. C. and T. S. Todd, doing business as Todd Bros. Construction Company, and the New York Indemnity Company, surety, upon their bonds executed him, wherein he prayed that the action be referred to a special commissioner for hearing proof and ascertaining the correctness and amount of the several lien claims thus sued upon by those who had supplied materials going into the building, and alleging the appellants' breach of contract and bond through their failure to pay these lien claims. The lien creditor, George L. Mesker & Co. (appellee), asserted no materialman's lien but came into the action by filing an intervening petition, asking judgment against Dr. Hurst, Todd Bros., and the New York Indemnity Company under the bond, for materials sold and furnished by it to Todd Bros. The appellants New York Indemnity Company and Todd Bros. alike filed answer wherein were set out in full the building contract, made between Todd Bros. and Dr. Hurst on August 6, 1929, and also the bond, executed by them for the faithful performance of the contracts with Dr. Hurst upon which the New York Indemnity Company became surety; and further it pleaded as to the Todd Bros.' bond that it became the firm's indemnitor only, for the performance of the contract, and that, as such, when the bond so given was construed with the parties' contract, expressly made a part thereof, that it was not bound under the bond for any labor or materials that went into the construction of the building described in the contract, inasmuch as it thereby secured the performance only of a percentage contract, based upon the estimated cost of the building's construction and not for labor or material purchased therefor, and that, if Todd Bros. purchased any materials going into said building, it did so only as agent for Dr. Hurst and not as his contractor or did so merely for accommodation; also it pleaded that Todd Bros. completed the building in February, 1930, when same was accepted for Dr. Hurst by A. L. Ware, his architect, and possession taken thereof by him. Amended answers were filed by Dr. Hurst alleging the making of the contract and the execution

of the bond by Todd Bros. and the New York Indemnity Company, as surety, for the faithful performance of the contract, upon the conditions named in the bond that Todd Bros. should satisfy all claims and demands incurred in performing same; and to indemnify Dr. Hurst, its indemnitee, from all cost and damage he might suffer by reason of its failure so to do, and that it should pay all persons having contracts directly with the principal for labor and materials. Further he pleaded that from the date of the execution of the bond and during the entire progress of the work on the building, that the contract was so construed and mutually understood by the parties, as providing and imposing on Todd Bros. the obligation to purchase materials, according to schedule prepared by the defendant Dr. Hurst therefor and to pay all persons having contracts directly with the said Todd Bros. for labor and materials. Further pleadings were filed, forming the issues, both as to what we will here call the Todd Bros.' branch of the case and also that involving the Hazard Plumbing & Supply Company's branch of it, hereinafter considered. The special commissioner to whom the case was referred and proof taken, filed report of his findings of fact to the effect that the parties' contract was one by which Dr. Hurst was to pay Todd Bros. the amount of their estimates rendered semimonthly for material and labor furnished, plus 7 per cent. thereon of the building's cost, for their services, and it to be responsible for the purchase and payment of the bills for materials, supplies, and cost of labor to those contracting with it therefor, and, by his report, further allowed to the appellee lienholders the amount of their lien claims subject to certain recited credits thereon recommended and also allowed to the appellee Dr. Hurst, certain claimed damages, to the extent of $1,060, found to have been caused by use of defective material and by reason of Todd Bros.' failure to properly construct certain portions of the building according to contract specifications. To this report of the commissioner's findings and recommendations both upon the Todd Bros.' and also the R. W. Owens' branch of the case, the appellants filed extended exceptions, which were upon submission of the case to the court for judgment, overruled by the court, the report confirmed and judgment rendered as by the report recommended, to wit: To each of the appellees' lien claimants a per-

sonal judgment against the contractor to whom it sold supplies, whether Todd Bros. or R. W. Owens and their surety, the New York Indemnity Company, and also with the exception of the claimants George L. Mesker Company and the Murphy Door Bed Company, adjudging to them a materialman's lien against the property of the appellee Dr. Hurst, subject to the restriction that the said claimants would first enforce their remedy under the personal judgments granted them against the contractor and the Indemnity Insurance Company before proceeding to enforce their materialman's lien against the property of Dr. Hurst. It was also adjudged that Dr. Hurst recover against Todd Bros. and the New York Indemnity Company the sum of $1,060, as damages, the same to be credited upon the amount of $2,925.42 found owing by Dr. Hurst to Todd Bros., and also that he should pay to R. W. Owens the sum of $87.89 found owing by him as a balance upon his contract with Owens, and that same be paid to the said Owens and the New York Indemnity Company, his surety, when they should have paid the amount adjudged against them to Ben F. Hurst & Co. of $1,360.53, and to the Plumbing Supply Company of $1,362.19 and interest for materials adjudged sold by said materialmen to the contractors, Todd Bros. and R. W. Owens. From this judgment, these two appeals or appeal from the judgments rendered upon the two branches of the case result.

Counsel for appellants earnestly insist that the court erred in overruling their exceptions to the commissioner's report and also in adjudging recovery to the appellee, Dr. Hurst, and the lien claimants upon the ground that by the language and terms of the contract, entered into between Dr. Hurst and Todd Bros., that the latter did not. thereby undertake to furnish the labor and materials required in the construction of the building, but were only to supervise and direct the same in consideration of a commission of 7 per cent. of the building's total·cost, to be paid them for their services; that the contract was one to be performed upon the basis of a "force account," and constituted but a percentage contract. Such, appellant contends, was the effect and clear meaning and intent of the parties, as evidenced by the alleged unequivocal and unambiguous language of the contract itself and therefore that the

bond in question, was given only to secure the faithful performance by Todd Bros. of such undertaking, and that the surety's liability thereupon, when construed with such contract, is limited to only indemnifying Dr. Hurst against such damage as he may have suffered by or as the result of Todd Bros.' failure to faithfully perform it. This contract of August 6, 1929, had between Dr. Hurst and his contractor Todd Bros., in substance, provides: (1) That the contractor shall perform and furnish, under the direction and to the satisfaction of the architect, Ware, the work and material included under the branch headings of the specifications of the Hurst building for 7 per cent. of the actual cost of the building, including all material and labor and to complete it on or before January 30, 1930; (2) that the contractor will furnish bond acceptable to owner and carry compensation insurance, both of which are to be paid for by the owner upon presentation; also (3) that the contractor agrees to purchase *materials according to schedules prepared by the owner;* (4) that the owner will pay to the contractor, for the said work, the sum of 7 per cent. of the cost of material and labor, to be paid semimonthly and added to specification estimates; (5) such sums shall be paid in current funds upon the certificate of the architect, 10 per cent. to be retained from the amount of each certificate to be paid in full after the final estimate, upon completion of the contract; and (6) that no payment made should be construed to be an acceptance of any defective work or material.

This contract, it is admitted, was made between the parties upon a blank builder's form of contract provided by Todd Bros., the blank spaces of which were filled in by the architect, Ware, in typewriting under the direction and according to the agreement of the contracting parties. Further it is admitted, that to secure the faithful performance of this contract with the appellant, whatever might be determined to be its reasonable and rightful construction and meaning, Todd Bros., as principal, with the New York Indemnity Company, as its surety, did within two days after its making, or on August 8, 1929, execute to Dr. Hurst, pursuant to the contract's requirement, an acceptable bond, whereby they bound themselves in the penal sum of $20,000 for

the faithful performance of the contract, and executed upon the following condition:

"Now, therefore, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and *shall pay all persons who have contracts directly with the principal for labor or materials,* then this obligation shall be null and void; otherwise it shall remain in full force and effect." (Italics ours.)

In this bond the parties' contract of August 6th is expressly referred to and by reference incorporated therein as a part thereof. It may here be stated, in reference to the circumstances under which this contract and bond were made by the parties, that, according to the evidence, Dr. Hurst, having decided to improve his lot with a hospital building, for the construction of which the contract here before us was made, employed one A. L. Ware, an architect, to prepare plans and specifications therefor, and also to secure price lists for the materials required for its construction, upon which an estimate might be safely made as to its cost; that such was done, when construction bids were called for and in response to which Todd Bros., a construction company of Richmond, Kentucky, made bid for the work at a price around $50,000, which was estimated by Dr. Hurst and his architect as some four or five thousand dollars in excess of what should be the reasonable cost of said building, when based upon the price lists they had secured upon its required building material. Thereupon a conference was had between Dr. Hurst and Todd Bros. with a view to their agreeing upon a lower cost bid for the building, when considered in connection with the price lists had for material, possessed by Dr. Hurst. The outcome of their conference was, according to the testimony of the parties, that an agreement was reached by them whereby Todd Bros. undertook the building construction upon what they termed a "force account," by which, it was explained, is

meant, that the contractor in such case undertakes to construct a building for an agreed per cent. upon the net cost of material and the absolute cost of the labor entering into its construction. The evidence is further that the contract in the instant case specifically states that the material was to be purchased by Todd Bros., the contractor, according to the schedule prepared by the owner, and that it was the understanding of the parties at the time of entering into their written contract of August 6, 1929, that Todd Bros. was by it required to purchase and to pay for the materials furnished in the building's construction. Also it further appears that at the time of the making of this contract that Mr. William T. Smith, the appellant company's Louisville manager, was in Hazard and was informed and knew of the arrangement for this building construction, agreed upon between Dr. Hurst and Todd Bros., and that Todd Bros. was thereby required to purchase and pay for the material therefor, when such cost price, plus 7 per cent. thereon, was to be, according to the contract, repaid Todd Bros., less 10 per cent. to be retained upon semi-monthly estimates, and that the agent Smith, after being so advised of the arrangement, recommended as properly securing the performance of Todd Bros.' obligations, assumed under the contract, the appellant company's standard form of indemnifying bond, which was then applied for and accordingly handled by the said agent and executed by Todd Bros. and the company to him. The appellant, however, contends, and as was set out in its pleadings, that the executed bond, in question, was only intended to be what the appellant terms, a "cost plus bond" by which is meant one, the agent Smith testifies, by which "the company guarantees a contractor to complete a certain project, based on the estimated cost by the architect, and a certain percentage of such cost to the contractor, and that under such bond no guarantee of the payment of labor or materials by the contractor is made." However, the said witness admitted that such a part of the condition named in the bond in question provided that the company should be liable to and "pay all persons who have contracts directly with the principal for labor or material," though on cross-examination he states that such conditions were not found in a "cost plus bond." Also it is to be noted that the language of the condition of this bond is

exactly the same as that of the condition named in this same company's bond, executed to Dr. Hurst for the faithful performance by Owens of his heating and plumbing contract, which it is agreed was a lump sum contract wherein it is conceded that Owens was to furnish all labor and material required for its performance. Also again it is to be noted that appellant does not here seek to reform the bond in question executed by it, as one having been made by fraud or mistake, as a result of which it failed to properly express the intended and customary provisions of a "cost plus bond," which it alleges the parties understood the appellant was to here execute, but only contends that the condition of the bond as executed, when construed, together with the parties' contract, for the performance of which it was executed, becomes one, by reason of the limitations upon its liability thereby arising, from such necessary construction of the two together, as renders it only a cost plus bond, limiting its liability thereunder only to the principal's faithful performance of a percentage contract, and without imposing further liability upon it for the benefit of those contracting for labor or material with said contractor or principal in said bond.

It appears agreed between the parties that for the purpose of ascertaining the meaning and intent of the contracting parties, as evidenced by the language and terms used by them in expressing their contract, that not only the circumstances of the parties when so contracting and the object intended to be secured thereunder may, where the contract is ambiguous, be inquired into for determining its intended meaning, but also that the acts and conduct of the parties, had in the performance of the contract, may be helpfully considered as illuminating evidence tending to show their own then understanding and contemporaneous construction of the intent and meaning of the contract as made by them. Here the evidence is undisputed that, immediately upon the making of this contract and indemnifying bond, work was begun upon the building by the contractor Todd Bros. for which, at the same time, he also began purchasing and ordering the material and labor used by him in its construction, and that he continued throughout the progress of the building to so order, purchase, and furnish the materials and labor going into the construction work, paying therefor out of the semimonthly

payments made him by Dr. Hurst upon the cost estimates thereof submitted him. This evidence certainly tends to show that the contracting parties understood, when performing the contract, that Todd Bros. thereby agreed to furnish the labor and material for the building.

In the case of Easter v. Johnson, 217 Ky. 639, 290 S. W. 505, it was held to be the universal rule in the construction of writings not to give them a different construction from that placed on them by the parties at the time of their execution. To same effect see City of Covington v. Union Light, Heat & Power Co., 243 Ky. 591, 49 S. W. (2d) 580. In the case of Mitchell v. Southern Railway Co., 124 Ky. 146, 74 S. W. 216, 217, 24 Ky. Law Rep. 2388, it was held:

> "It is sometimes not only important for the court to consider the language employed in the contract, but the circumstances surrounding the parties, and the object in view which induced the making of it. It is not proper, in construing a contract, for a court to seize upon some expression in it, and allow that to control, in disregard of other provisions of it."

However, no single expression here found in the contract is seized upon as entirely controlling the question as to the contractor's undertaking or as to what it assumed under some particular expression of its language, though the provision of the contract here before us does expressly provide that the contractor is to purchase the material according to the owner's price lists or schedules thereof, and that, upon his making such outlay for material and labor, he is to receive semimonthly accounting and repayment, based upon submitted estimates thereof.

Appellant, despite such clear provision of the contract, and conduct of parties interpreting it, yet contends, that to give the contract this alleged forced and strained construction, whereby contractor is held to furnish and pay for the materials used in the building, would result in merely effectuating a fraudulent scheme upon the surety, whereby it could be made to pay, as surety, upon what was made only as a percentage contract, for the building materials herein sued for. We, however, are led to regard such contention

as being a statement of appellant's conclusion, rather than one supported by either the evidence or a reasonable interpretation of the contract, as explained by it. It was certainly not in itself a fraudulent purpose or desire, framed up by Dr. Hurst, that he, being a physician and much engrossed in the practice of his profession, should wish to secure a contractor to construct his proposed hospital upon terms whereby the contractor would attend to the business of purchasing and supplying the materials, as well as directing the work of its construction, to the end that when so relieved by Todd Bros.' services he might not be harassed by repeated calls upon his time and attention to purchase and furnish the considerable volume of both labor and material called for in the construction of this $50,000 building. Nor is the claim that such an arrangement was inspired with the fraudulent purpose in any wise supported by the provision of the contract, that the materials required for the building should be purchased from the cheaper price lists, had by Dr. Hurst therefor, inasmuch as the contractor's purchase of the material at such lower price not only saved the owner some four or five thousand dollars, in its original cost realized through use of the owner's cheaper price list, but also resulted in further saving him the 7 per cent. commissions, based upon its cost, payable to both architect and contractor.

Appellant contends, however, that to hold his liability under the bond to be one, not only indemnifying Dr. Hurst against all cost and damage by reason of the contractor's failure to perform and to fully reimburse the owner against all outlay which he might incur in making good any such default, but to impose upon it also the liability, to pay all persons who have contracts with the principal for labor or materials, also expressly provided for in the condition of the bond, is an unwarranted extension of its fair meaning and construction and one based only upon unjustified implication and in violation of the applicable rule as to surety contracts, calling for strict construction and for resolving all doubts and technicalities in favor of the surety as "a favorite of the law." While there was at common law the rule requiring the most strict construction of sureties' obligations as being liabilties assumed without pecuniary compensations and therefore not to be extended by implication or construction, such rule does

not apply to the later day cases of surety bonds of companies organized for the express purpose of acting as a surety for compensation. The courts almost universally agree that such contracts are to be construed most strongly against the surety and in favor of the indemnitee, which the obligee has reasonable grounds to expect.

The courts further, in following this rule, regard the contract more in the nature of an insurance contract and by analogy apply the rules governing liability applicable in the latter class of contracts. See annotations 12 A. L. R. 382; also Champion Ice Mfg. & Cold Storage Co. v. American Bond & T. Co., 115 Ky. 863, 75 S. W. 197, 198, 25 Ky. Law Rep. 239, 103 Am. St. Rep. 356, in which case the court said, in construing the sureties' bond therein given:

> "It will be observed that the bond in this case is a printed one—prepared, doubtless, by a skilled attorney in appellee's employ. The contract expressed therein is but a form of insurance, and the law of insurance is that, in the construction of policies, if there be any ambiguity in them, it must be construed most strongly against the insurance company."

Again this rule was stated in Tebbets v. Mercantile Credit Guarantee Co. (C. C. A.) 73 F. 95, 97, cited in 12 A. L. R. 386, by the court as follows:

> "Corporations entering into contracts like the one at bar may call themselves 'guarantee' or 'surety' companies, but their business is in all essential particulars that of insurers, who, upon careful calculation of the risks of such business, and with such restrictions of their liability as may seem to them sufficient to make it safe, undertake to assure persons against loss, in return for premiums sufficiently high to make such business commercially profitable. Their contracts are, in fact, policies of insurance, and should be treated as such."

Also in National Surety Co. v. McCormick (C. C. A.) 268 F. 185, 188, it is again by the court thus stated:

> "But this is not that ordinary contract of voluntary suretyship, as to which there has arisen a sort of tenderness toward sureties. This is a contract of insurance, entered into by the surety for

the revenue which it derives from the business of suretyship, and in this relation the obligation should be treated as other insurance contracts, which are usually construed most strongly against the insurer.''

Also see Young Men's Christian Ass'n, etc., v. Indemnity Ins. Co. of North America, 244 Ky. 473, 51 S. W. (2d) 463, and Republic Life & Accident Ins. Co. v. Hatcher, 244 Ky. 574, 51 S. W. (2d) 922, 924, where the court, in considering the rule of construction of insurance policies, said:

"In such situation, we are constrained to adopt the construction most favorable to the insured, regardless of the persuasiveness of the arguments or the weight of authority on the question. It is an accepted principle of insurance law that a contract reasonably capable of two or more constructions must be given the interpretation most favorable to the insured.'' (Citing an extensive list of authorities.)

The next question here presented for our decision is, was the condition of the bond, here given, whereby it assumed liability to "pay all persons who have contracts directly with the principal for labor or materials,'' one available to the appellee lien claimants, as was herein adjudged, as a provision made for their benefit, entitling them to recover under this language of the bond for materials furnished and supplied by them to Todd Bros., and used by him in constructing Dr. Hurst's building? It will be observed that the contract stipulated that Todd Bros. was to purchase materials according to schedules prepared by the owner, while the bond given for the performance of this contract went to the further extent of providing that the surety should be liable to all persons contracting with the principal (Todd Bros.) for labor or materials, used in carrying out the contract. In the case of Mid-Continent Petroleum Corporation v. Southern Surety Co., 225 Ky. 501, 9 S. W. (2d) 229, 230, where the same question was before the court as to whether an action lay on the bond by materialmen and also, if such right of action existed, if it entitled only those having lienable claims to sue upon the bond, the court said:

"Construing the contract and bond together, it was held the bond was for the benefit of the obli-

gee and not for the benefit of materialmen. Here, however, after a provision in the bond for indemnification of the obligee, the surety undertakes that the contractor 'shall also pay for all labor performed or furnished and for all materials used in the carrying out of said contract.' This covenant was unnecessary for the protection of the obligee and the only purpose for which it was inserted was to bind the surety for the payment of claims for labor and materials. * * *

"In National Surety Co. v. Daviess County Planing Mill Co., 213 Ky. 670, 281 S. W. 791, the board of education of the city of Owensboro let a contract for the construction of a school building. The contractors executed bond to the board of education by which they undertook to faithfully perform the contract. After providing that the principal should fully indemnify and save harmless the owner from all cost and damage which it might suffer by reason of the failure of the contractors to faithfully perform the contract on their part, and that they should fully reimburse and repay the owner all outlay and expense which the owner might incur in making good such default, the bond contained this clause: 'And shall pay all persons who have contracts directly with the principal for labor or materials.' It was held that the bond was for the benefit of materialmen."

Also under the rule and doctrine of these cases as to the company's liability under its bond for the payment of third persons, having contracts for material or labor with the principal, just as is here the case, the same is controlling as to the propriety of the court's judgment in holding that George L. Mesker & Co. and the Murphy Door Bed Company should recover under the bond upon their claims, even though they, by reason of failure either to assert materialmen's lien or else in failing to seek its enforcement within twelve months thereafter, did not hold mechanic's or materialmen's lien against the property of Dr. Hurst. It is, however, to be further here noted that the appeal sought to be brought here upon the judgment directing the allowance of the $180 Mesker claim was improper, since the recovered judgment for such amount was not based upon a statutory lien nor for as much as $200, and therefore

an appeal could not be granted thereon even if here moved for, which it appears was not asked, however, as to this claim. The appeal as to it is therefore dismissed.

The appellant next complains that the allowance for damages to Dr. Hurst in the sum of $1,060 as caused by defective work or use of defective materials by Todd Bros. in the construction of his building was improper for the reason, he alleges, that same was not claimed by Dr. Hurst until after the building had been accepted and possession thereof taken by him as a building completed according to the terms of the contract. However, the testimony as to this is that the building was not so accepted by appellee Dr. Hurst as one completed in satisfactory compliance with the terms of the contract, nor that the construction of the same was ever completed in compliance therewith. In fact, the evidence as given upon this point was directly to the contrary, and that written notice had been given to the appellant surety company to the effect that Todd Bros. had failed to properly perform their contract, and that these items of damage, as claimed, had resulted.

Appellants' contention here made as to this is well answered by the language of the court's opinion in the case of Cassinelli v. Stacy, 238 Ky. 827, 38 S. W. (2d) 980, 985, wherein the court said:

"It is further insisted that Cassinelli took actual possession of the building, moved seats and equipment for a picture show into it, and otherwise assumed control over it, and that by reason thereof he is without right to complain of the defects, omissions, or variations from the contract, the plan, and specifications. Cassinelli did not forfeit his claim against appellee for damages by his taking possession and assuming control of the building or by not discovering all of the defects or omissions in its construction, or by agreeing that if certain specified defects were corrected that he would 'pay off.'" (Here follows list of cases.)

We will now, next, consider the Hazard Plumbing & Supply Company's branch of the case: The appellant again here contends that the court erred in adjudging recovery upon its bond, of the two lien claims of Ben F. Hurst and the Plumbing & Supply Company,

for the reason it alleges that Dr. Hurst, the indemnitee in the bond, was fully paid by R. W. Owens, the principal in the bond, by payments made him by his work and labor and materials furnished upon jobs done for him, and also for the reason that Dr. Hurst accepted, to the prejudice of appellant and its right of subrogation to Owens' equity therein, the conveyance of certain Hardin county lands from the said Owens after the appellant's execution of Owens' surety bond to him and when it was known by appellee that Owens' equity in such lands were included in the statement of his assets made when applying to appellant for the bond. In answer to these contentions we deem it sufficient to say that we have carefully considered the evidence bearing upon these points and find the same to be unsupported by it.

As to the conveyance of the land made to appellee by Owens, we find that it was, at the time of its conveyance to Dr. Hurst, subject to a Federal Land Bank mortgage, and also to a second mortgage for some $2,300, for a debt claimed owing appellee by Owens made long prior to the execution of the bond, and in fact as far back as the year 1924. Also it appears that these mortgages upon the land, and of record, were known to the bonding company and set out in the application made to it for the bond, and, further, that the conveyance of the land to appellee in 1930 was then made when foreclosure proceedings were threatened against him by the Land Bank upon its mortgage and to forestall which it was reconveyed the appellee in satisfaction of his second mortgage debt and his assuming payment of the bank's prior mortgage debt. Also it appears that said amounts thus paid Owens, represented fairly the value of the farm. In fact appellee, it appears, did by his pleading and otherwise offer to convey the appellant bonding company the farm upon condition of its payment of the mortgage debts then existing against it, when conveyed appellee.

As to appellant's further contention that it is not liable to Dr. Hurst upon the surety bond given him for the performance of the Owens' contract for the payment of the two claims of the Ben F. Hurst Company and the Plumbing Supply Company, for the reason, it alleges, that Owens has already saved harmless Dr. Hurst for the payment of these two claims by reason of

having paid him their amount in extra work and jobs done for him and for which the doctor is now owing him, we think the evidence sufficiently shows the fact to be that whatever amount over the sum of about $87, which Dr. Hurst admits owing Owens upon his heating and plumbing contract for the hospital building, is otherwise owing by him, if anything, to Owens is for other work and jobs done for him entirely different from his work called for by his contract relating to the hospital building, for the performance of which only, the indemnifying bond herein sued upon was by the appellant executed.

The appellant has no right to here ask the application of such amounts, if any, owing by Owens to appellee Dr. Hurst to the reduction and satisfaction of its liability, as surety, under the bond or to claim that by the reason of the failure of Dr. Hurst to so credit such amount thereon that the appellant is absolved from further liability upon its bond. Appellant was not injured or prejudiced through his failure to receive from Dr. Hurst credit upon its bond liability to which it was not entitled, or by conveyance of the Hardin county land to him, under the circumstances stated. The rule is that a surety must show injury done it before it can ask to be relieved from contracts which they eagerly sought to execute. It is, however, the duty of a beneficiary in a contract, the performance of which is secured by a bond of a paid surety, in good faith, to observe the expressed obligations of the contract, and also to refrain from doing something which in law alters his position or liability, increases his risk, or deprives him of a right to some indemnity afterward by the principal's contract. American Surety Co. of N. Y. v. Noe, 245 Ky. 42, 53 S. W. (2d) 178.

We are of the opinion, however, that the appellee Dr. Hurst has not been shown by the evidence herein to have in any wise violated any obligation or duty owing by him to the appellant surety company, as above set out, by reason of his complained of dealing and transactions had with his contractor R. W. Owens, therefore it must follow, for the reasons as herein above indicated in our discussion and disposition of both the Todd Bros. and the Hazard Plumbing & Supply Company's branches of this case, that the ruling of the trial court, being in accord with our views as herein ex-

pressed, and giving to his opinion as to the facts, the credit to which it is due, the judgment will not be disturbed.

The judgment is therefore affirmed.