**William BURKE, Appellant,**

v.

**Addie Keaton BURKE, Appellee.**

Court of Appeals of Kentucky.

June 16, 1967.

Francis Dale Burke, Pikeville, for appellant.

Frank K. Warnock, J. D. Atkinson, Sr., Greenup, for appellee.

PALMORE, Judge.

William and Addie Keaton Burke, the parties to this proceeding, were married in 1958. Both were in their fifties, and each had been married before. Addie's previous husband had died intestate leaving a 147-acre farm, upon which Addie and William resided until 1962, when it was partitioned between Addie and her son, the son receiving the portion on which the residence was located. Addie and William came to a parting of the ways in 1963, whereupon she sued for and was granted a divorce on the ground of cruel and inhuman treatment, KRS 403.020(3) (b). William's counterclaim for a divorce on similar grounds was denied. Both appeal from the provisions of the judgment relating to property restoration and alimony.

At the time of the marriage Addie had $6,890.28 in a bank account and, she says, $735 in cash. She also owned, in addition to her interest in the farm, other real estate and various personal property. William owned several houses and lots, some promissory notes and, he says, $4,300 in cash. Except for the division of the farm, Addie still owns the real estate she had in the beginning. William has sold some of his parcels and bought others. During the marriage he earned about $20,000 as an employe of the Norfolk and Western Railway Company. Addie was not employed. When the separation occurred they had two joint bank accounts, one in the amount of $14,863.63 and the other in the amount of $11,361.00. Addie withdrew the larger of these amounts and re-deposited it in her own name.

From the evidence it is not possible to trace the flow of cash during the period of the marriage, particularly with respect to the property and income of the husband. The method of restoration chosen by the chancellor was to credit Addie with the equivalent of what she had in the beginning, plus cash received during the marriage to which she was entitled in her own right, charge her with the $14,863 plus $2,-000 allowed to William for improvements made by him on her house, and give William what was left. The net result was a balance of $3,121.68 owing from William to Addie, and a restoration of various items of personal property to the respective parties. The approach being fundamentally sound, the result must be upheld unless its factual content is clearly erroneous. CR 52.01.

The gross sum of money to which the chancellor found Addie entitled was $19,-805.28, representing the following items:

| | | |
|---|---|---|
| 1. | Bank account at time of marriage | $6,890.28 |
| 2. | Interest on $6,890.28 at 4% for five years | 1,378.00 |
| 3. | 1949 Ford truck | 300.00 |
| 4. | Cash | 300.00 |
| 5. | Cattle | 2,400.00 |
| 6. | Two mules | 125.00 |
| 7. | Proceeds of fire insurance policy | 3,000.00 |
| 8. | Owelty * received in division of farm | 2,000.00 |
| 9. | One-half of gross farm income | 2,977.00 |
| | Total | $19,805.28 |

* Boot.

■ We have carefully reviewed each and every one of these items against the evidence, and find that some could have been less and others could have been more. For example, a tractor was purchased for $3,600 out of the $6,890.28 bank account. The chancellor could have credited Addie with $3,290.28 and left her in possession of the tractor, but obviously he took her word, as he had the prerogative to do, that she loaned William the $3,600 and the tractor is his. The interest represents what would have been earned by the $6,890.28 if William had never entered the picture. The $2,400 allowed for cattle is less than it could have been. She said she owned 27 head of cattle appraised at $3,180 and he sold them. He denied it, but the chancellor decided to believe her. If they were worth $3,180 it would not be unreasonable to assume, in the absence of further evidence, that they brought that much when sold. She said the gross farm income during the marriage came to about $5,940. The judgment allowed her half that amount. He said they lost money on the farm every year, but the law does not oblige the factfinder to believe it. In the absence of specific evidence of the expenses, and of the agreement (if any) between the parties as to how they were to be allocated, we cannot say that the finding was clearly erroneous. And so on.

■ In reviewing the analysis and disposition of complicated or numerous accounts it is not a practical function of this court to undertake a de novo and detailed analysis of its own. We can look only to the extent necessary for a determination of whether manifest injustice has occurred. If the over-all result does not seem clearly erroneous, we are not disposed to pick it apart and adjust the particular pieces that may be. Were we to do so in this instance, the final result would not be far different from what the chancellor decided. We hold that his findings were not clearly erroneous.

■ The evidence was amply sufficient to justify the charge of $2,000 against Addie for improvements made on her house by William. It could have been more, and it could have been less.

■ Both parties are dissatisfied with the alimony award, which was $3,000. William's contention that Legel v. Legel, Ky., 382 S.W.2d 870 (1964), limits alimony to the estate accumulated by the husband during the marriage is not well taken. That limitation applies only in the class of cases in which the wife is at fault and the divorce is granted to the husband, but in view of her indirect contribution to the husband's estate through performing the duties of a housewife she is entitled to alimony out of the estate accumulated by the husband during the marriage. Cf. Carter v. Carter, Ky., 382 S.W.2d 400 (1964); Hall v. Hall, Ky., 380 S.W.2d 231 (1964). Suffice it to say that the corpus of the husband's estate in this case is enough to bear $3,000. Another important consideration, made so by the alimony statute itself, KRS 403.060(1), is the sufficiency of the wife's estate. Goldstein v. Goldstein, Ky., 377 S.W.2d 52, 54 (1964). The record indicates that Addie's estate is not inconsiderable, possibly equal to William's, and that William's earning power is virtually ended. Under the circumstances we cannot say the allowance is inadequate.

■ Addie complains also that after the master commissioner had filed his report but prior to entry of the judgment her motion for leave to take further evidence, supported by an affidavit to the effect that William had settled a personal injury claim against the railroad company for over $20,000, was overruled. This, of course, was a matter within the sound discretion of the chancellor, and we are not persuaded that it was abused. Moreover, these parties having been married but five years, and during the evening years of their lives, Addie has not been so damaged or reduced in circumstances or prospects as to require any more alimony out of monies that pre-

sumably are payable or have been paid to William as compensation for damage to or destruction of his earning power.

The judgment is affirmed on both the appeal and cross-appeal.

All concur.