**FERGUSON CONTRACTING COMPANY,**
**Inc. and the Fireman's Fund Insur-**
**ance Company, Appellants,**

v.

**CHARLES E. STORY CONSTRUCTION**
**COMPANY, Appellee.**

Court of Appeals of Kentucky.

June 30, 1967.

Carmol D. Cook, Hartford, Henry O. Whitlow, Waller, Threlkeld & Whitlow, Paducah, for appellants.

H. H. Lovett, Jr., Lovett & Lovett, Benton, for appellee.

STEINFELD, Judge.

Charles E. Story Construction Company was the prime contractor for grade and drainage work on a section of highway to be constructed in Marshall County by the Department of Highways of the Commonwealth of Kentucky. Story subcontracted a part of the work to Ferguson Contracting Company, Inc. and part to other subcontractors. On January 19, 1960, The Fireman's Fund Insurance Company, on behalf of Ferguson, executed a bond in favor of Story to insure the performance of the provisions of that subcontract. Claiming that Ferguson had failed to perform as agreed Story sued Ferguson and Fireman's Fund for $13,925.93 and interest. After considering the evidence the circuit court entered judgment for $9,088.71 against both defendants and they have appealed. Story has not filed a cross-appeal.

Before construction began Ferguson entered into contract with Lowe Construction Company to do the work it had agreed to perform for Story. In April 1960 Ferguson and/or Lowe began construction as contemplated. However, before the end of May 1960 the Department of Highways ordered work stopped because Story had subcontracted to others more of the work than was permitted by the general contract. About June 2, 1960, to induce the Highway Department to permit it to resume the work, Story made certain representations under oath to, and agreements with, that Department as follows:

(a) That it had rented the grading equipment from Ferguson and that it would pay the operators of this equipment.

(b) That it would submit certified copies of payroll which would show the name of each employee (with certain exceptions), his occupation and rate of pay.

(c) That it would make available for inspection by the Highway Department all canceled checks and invoices pertaining to the payment of wages and payment for material.

(d) That by a bill of sale Lowe had conveyed to Ferguson the equipment being used on the project.

The contract between Story and Ferguson was never canceled and there was no alteration as to the work to be performed by Ferguson.

Work was resumed and Story began to pay the employees of Ferguson and to pay for materials which Ferguson used. Story paid nothing to Lowe. Up until November 19, 1960, Story made settlements with Ferguson based upon completed work but Story failed to withhold 5% retainage according to a provision of the contract secured by the bond. In checking the amount and quality of work performed on the project the Department of Highways never checked or calculated separately the work performed which originally was subcontracted to Ferguson.

The work was not proceeding to the satisfaction of Story. On August 24, 1960, it wrote a letter to Ferguson and sent a copy to the Fireman's Fund in which it complained of slow progress and threatened to terminate its agreement with Ferguson as of August 29, 1960. On September 9, 1960, Story wrote to Fireman's Fund informing it that the work which Ferguson had agreed to do was approximately 70% complete and that the job was going much better. Among other things, that letter stated "We don't think you have any problems although if any come up we will let you know."

Fireman's Fund contends that no other written notices, demands or complaints of any kind were made by Story to Fireman's Fund until after the project had been completed. However, Mr. Charles E. Story testified that he had some telephone conversations with Fireman's Fund during the year 1961 but he did not recall any such conversations in 1960 after the letter above referred to was written. No evidence was presented which contradicts this testimony. There was evidence that Fireman's Fund was kept informed of the problems which Story was encountering with Ferguson but that Fireman's Fund ignored these communications and made no investigation.

In 1961 the project was completed and Story had difficulty in settling with the Department of Highways. Story made claim of Ferguson and of Fireman's Fund for sums allegedly expended by Story for payrolls and materials, which Story contended should have been paid by Ferguson. Ferguson denied liability and contended that its personnel and Lowe's personnel and equipment performed the contract and that at no time did Story take over the work.

Fireman's Fund disclaims liability for the reason that it was never notified of the representations and new agreements listed above and because Story and Ferguson materially changed the manner of performance of the contract after the bond was executed. It charges that this was done for the sole benefit of Story without notice to it and without its consent.

Fireman's Fund argues that the changes made by Story and Ferguson were detrimental to it. It cites New York Indemnity Co. v. Hurst, 252 Ky. 59, 66 S.W.2d 8, 94 A.L.R. 864 and Inland Navigation Co. v. American Surety Co. of New York, 190 Ky. 504, 227 S.W. 809, from which latter case we quote:

> "It is fundamental that any agreement or dealing between the creditor and the principal in an obligation of debt, which essentially varies the terms of the contract, without the consent of the surety, will release the surety from liability. * * * When his contract is changed without his knowledge or authority, it becomes a new contract and is invalid, because it is deficient in the essential element of consent. And it has been held that it is not of any consequence that the alteration of the contract is trivial, or even that it is clearly for the advantage of the surety, if it appears that it varied his responsibility, and was without consent. It is the surety's right to determine for himself what is, or is not, for his benefit."

Story counters by insisting that the work was the same and that the bookkeeping arrangement was no different than if it had engaged a bookkeeping service. It insists that the changes in arrangement were minor and therefore did not release Fireman's Fund. It argues that these changes did not vary the provisions which affected the surety, and being a paid surety it was not released. United States Fidelity and Guaranty Co. v. Travelers' Insurance Machine Company, 167 Ky. 382, 180 S.W. 815; American Surety Company of New York v. Noe, 245 Ky. 42, 53 S.W.2d 178.

■ The surety's contention must be tested under the law as it applies to a bond executed by one engaged in the "surety business". "(T)he rule of strictissimi juris, which originated to protect accommodation

endorsers on fixed and precise obligations, does not extend to contracts such as the one in question." Simmons Const. Co. v. Powers Regulator Co., Ky., 390 S.W.2d 901.

■■ The circuit court found that there was a change in the bookkeeping procedure but that this was not a material alteration of the contract between Story and Ferguson that would have any effect whatsoever on the surety. One engaged in the surety business is not released from liability on a bond which it signs when the alteration of the contract was not material, did not affect the substance of the contract and did not increase the risk or responsibility of the surety. United States Fidelity and Guaranty Co. v. Travelers' Insurance Machine Company, supra.

"A departure from the terms of the contract will not have the effect of discharging a compensated surety unless it appears that such departure has resulted in injury, loss, or prejudice to the surety, there must be a material variance. It has been said that to allow compensated surety companies to collect and retain premiums for their services, graded according to the nature and extent of the risk, and then to repudiate their obligations on slight pretexts which have no relation to the risk, would be most unjust and immoral, and would be a perversion of the wise and just rules designed for the protection of voluntary sureties. As it has been otherwise expressively stated, the modern day surety company must show some injury done before it can be absolved from the contracts which it clamors to execute." 50 Am.Jur. 1115, Suretyship, section 321.

The surety has failed to show injury caused by the modification. We find nothing to indicate that the trial court was in error in holding that the surety was not detrimentally affected by the changes made.

Fireman's Fund charges that Story's failure to notify it of the default of Ferguson was a breach of a duty owed by Story to Fireman's Fund and that this breach released Fireman's Fund from all obligations under the bond. It fails to point out from what source this alleged obligation arises.

The surety company seeks to invoke the doctrine of promissory estoppel to support its contention that Story had a commitment to notify Fireman's Fund as to any default of Ferguson and having failed to do so it cannot recover. It cites Floyd v. Christian Church Widows and Orphans Home of Kentucky, 296 Ky. 196, 176 S.W.2d 125, 151 A.L.R. 1230. The law stated in that case is not applicable to the facts now before us.

Story says that it was only required to exercise reasonable diligence to serve notice on the surety and cites Allen County v. United States Fidelity and Guaranty Company, 122 Ky. 825, 93 S.W. 44 and Warden v. Addington, 131 Ky. 296, 115 S.W. 241.

■ Whether there was an obligation to give notice of default is not germane to our decision because the circuit court found that Fireman's Fund had timely and adequate notice that Ferguson had failed in its responsibility after which the surety company took no action. While this question is properly raised on appeal (CR 52.03), it is our opinion that there was sufficient evidence to support this finding, therefore, we will not disturb it. CR 52.01. Southern R. R. Co. v. Kelly Const. Co., Ky., 406 S.W.2d 305.

■ Story claimed that it was entitled to recover 7% for profit and 8% for overhead. The circuit court disallowed profit but adjudged it entitled to 10% for overhead. Both appellants contend that overhead should not have been allowed and cite Tri-State Developers, Inc. v. Moore, Ky., 343 S.W.2d 812, in which we held that a "supervisory charge" should not have been included in a judgment. We do not interpret the allowance made in the case before us to include anything except that which was necessary to complete the contract. There was testimony that normal

overhead usually runs about 8% but the lower court said that "as this job was so complicated and the bookkeeping so great, the court is increasing that amount to 10% in allowing a 10% overhead." Allowing 2% excess overhead in lieu of profit was not prejudicial error as claimed by Fireman's Fund.

Finally it is claimed that the allowance to Story of certain additional items was erroneous. The contention is that the bookkeeper had no personal knowledge as to specific items and relied upon notations on invoices and various sources of hearsay. Similar contentions are asserted as to other witnesses. The transcript of evidence convinces us that no error was made by the court below. Time Finance Co. v. Beckman, Ky., 295 S.W.2d 346. Also see 17 A.L.R.2d 235.

The circuit court considered many items and allowed 52 of them. It also examined credits and approved 18 for work that "was performed on Ferguson's portion of the contract" and ordered credit given for 7 payments of cash. The appellants request that we re-examine many of these claims. In Burke v. Burke, Ky., 416 S.W.2d 724, 726 (decided June 16, 1967) we said:

"In reviewing the analysis and disposition of complicated or numerous accounts it is not a practical function of this court to undertake a de novo and detailed analysis of its own. We can look only to the extent necessary for a determination of whether manifest injustice has occurred. If the over-all result does not seem clearly erroneous, we are not disposed to pick it apart and adjust the particular pieces that may be."

It is the province of the trial court to find facts and evaluate the testimony. The scope of review is to determine if there was sufficient, competent evidence to support the judgment. Creech v. Miniard, Ky., 408 S.W.2d 432. Unless the findings are clearly erroneous we will not hold to the contrary. CR 52.01. We

have found nothing that convinces us that the findings of the trial court were clearly erroneous.

The judgment is affirmed.

All concur except OSBORNE, J., who was not sitting.